UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EXPANSE NETWORKS, INC., | § § § | |
| Plaintiff, | § § | Civil Action No. 02-CV-2857 |
| v. | § § § | JURY DEMANDED |
| CATALINA MARKETING CORP., | § § § | |
| Defendant. | § | |

PLAINTIFF EXPANSE NETWORKS, INC.'S
MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Plaintiff Expanse Networks, Inc. ("Expanse") submits this memorandum in opposition to the motion for protective order filed by Defendant Catalina Marketing Corp. ("Catalina") pursuant to Federal Rule 26(c). In short, the motion should be denied because Catalina has made boilerplate, unsubstantiated allegations of potential harm (thereby failing to meet the heavy burden imposed in this Circuit) and its request and proposed order are overly broad.

**A. INTRODUCTION**

Expanse has sued Catalina for patent infringement, alleging that some of Defendant's systems infringe Plaintiff's United States Patent No. 6,216,129.

Catalina has been served with discovery in this case, but responded that it will not produce anything until a signed Protective Order is in place. Catalina specifically asked Expanse to agree to a "highly privileged" designation for its software and/or code, which would limit its viewing to outside counsel and any independent experts retained to study the software. After initially

1

trying to negotiate these terms, Expanse realized Catalina would remain firm on this issue and, on July 11, 2003, Expanse attorney Edward Goldstein sent an email to Catalina attorney Paul Storm agreeing to this term.

The parties, however, could not come to an agreement about the remaining discovery items. Catalina seeks a "blanket" Protective Order and Expanse submits that Catalina has not met its heavy burden to show with specificity that such a broad Order is necessary, especially since the parties are not competitors.

**B.** ARGUMENT

1. Catalina Has Not Shown a "Clearly Defined and Serious Injury."

Expanse acknowledges that the Court has broad discretion to protect a party with a protective order on the showing of good cause, and that a trade secret or other "confidential research, development, or commercial information" may be the subject of a protective order under Fed. R. Civ. P. 26(c)(7).  American Standard, Inc. v. Pfizer, Inc., 828 F. 2d 734, 739-740 (D. Del 1984).

But it is also true that, "one seeking a protective order under that rule must establish that the information sought is confidential." Id.  See also Heat & Control, 785 F. 2d 1017, 1025, *228 U.S.P.Q. (BNA) 926, 932 (Fed. Cir. 1986)*; Centurion Indus., 665 F. 2d 323, 325, 213 U.S.P.Q. (BNA) 36, 38 (10th Cir. N.M. 1981); Coca-Cola Bottling Co., 107 F.R.D. 288, 292, 227 U.S.P.Q. 18, 21 (D. Del 1985).

Courts have fashioned a two-part test under Rule 26(c)(7). The movant must show that (1) the interest for which protection is sought is an actual trade secret or other confidential business information protected under the Rule, and that (2) there is good cause for the protective order.

Culinary Foods, Inc. v. Raychen Corp., 151 F.R.D. 297,300 (N.D. Ill. 1993) (citing Cipollone v. Liggett Group, Inc., 785 F. 2d 1108, 1121 (3rd Cir. 1986) cert. denied, 484 U.S. 976, 108 S. Ct. 487 (1987). See also Wiggins v. Burge, 173 F.R.D. 226, 228 (N.D. Ill. 1997) (requiring an affirmative showing of good cause by movant for all Rule 26(c) protective orders). When these showings are made, the district court will often balance the competing interests and fashion a protective order limiting the disclosure to persons for the purposes of the lawsuit only. Julius M. Ames Co., v. Bostich, Inc. 235 F. Supp. 856, 857 (S.D. N.Y. 1964).

To satisfy the good cause prong in the Third Circuit, "the party seeking protection bears the burden of showing disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity.'' Pansy v. Borough of Stroudsburg, 23 F. 3d 772, 786 (3rd Cir. 1994) citing Publicker Indus., Inc. v Cohen, 773 F. 2d 10549, 1071 (3rd Cir. 1984). Courts have increasingly required "specific examples of articulated reasoning," Cipollone, 785 F. 2d at 1121, as opposed to "stereotyped and conclusory statements." United States v. Garrett, 571 F. 2d 1323, 1326 n. 3 (5th Cir. 1978). See also Culinary Foods, 151 F.R.D. 297, 300 (N.D. Ill. 1993) n. 1 quoting United States v. International Business Machines Corp., 67 F.R.D. 40, 46 n. 1(S.D. N. Y. 1975) (holding that with respect to the claim of confidential business information, this standard demands that the company prove that disclosure will result in a "'clearly defined and very serious injury'" to its business).  See also Rosenblatt v. Northwest Airlines, Inc., 54 F.R.D. 21, 23 (S.D. N.Y. 1971), (holding that an attorney's affidavit, merely stating that discovery would lead to the revelation of trade secrets, did not pass the threshold of specificity).

In the present case, Catalina uses the very general terms "competitive disadvantage" and

"loss of trade secrets" as the potential harms to be suffered if the Court denies the proposed protective order. (Catalina Motion, at p. 3). It offers no affidavits or anecdotal evidence, thereby failing to meet its burden as a matter of law. Moreover, to the extent that Catalina attempts to offer facts, the so-called facts are actually half truths. Catalina says that both parties objected to discovery on the basis that confidential information was sought and a protective order must be entered. (Catalina Motion at p. 2). In fact, Expanse made no such objection in its Objections and Answers to Catalina's First Set of Production (Attached hereto as Exhibit A), and has been gathering and Bates numbering documents and software which it expects to produce as soon as they are ready. Catalina also claims that the parties compete in the same industry. That, too, is false. While Expanse holds patents that it believes Catalina is infringing, Catalina markets products and/or services, Expanse simply engages in intellectual property consulting and valuation of patents. Expanse owns intellectual property. It does not have a product in the marketplace, has never had a product in the marketplace and has therefore never been a competitor of Catalina.

    2.    Catalina Has Not Detailed Any Items Needing Protection Except For Computer Software and/or Source Code (which Plaintiff has agreed to protect).

A party can not simply designate areas of confidentiality. "The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order." Cipollone at 1122 n. 17. See also San Jose Mercury News, Inc., 187 F. 3d 1096, 1102 (9th Cir. Cal. 1999) (holding that to gain a **protective order** the party must make "particularized showing of good cause with respect to any individual document") See also Andrew Corp. v. Rossi, 180 F.R.D. 338, 342 (N.D. Ill. 1998) (holding that Plaintiff's proposed

order 'was not narrowly constructed. The proposed categories of protection are vague, covering everything from specific personnel files to the speculative-at-best class of "potential customers.")

In John Does v. Yogi, 110 F.R.D. 629, U.S. Dist. LEXIS 24053, 110 F.R.D. 629 (D.D.C. 1986), the Court refused to grant a wide-sweeping protective order, holding: "To the extent that discovery reveals specific written, visual or audio materials compiled by defendants and not sufficiently protected by copyright or trademark law, the Court will entertain requests for limited protective orders at the time the material is sought." Id at 633. While rejecting the "umbrella order", the Yogi Court did note three specific areas that had been described with enough specificity and narrowly tailored a protective order that applied only to those three areas.

Catalina is equally non-specific and overbroad in describing the categories of documents it wishes to protect. The only area it describes with specificity is its software and/or software source code. Yet, Catalina offers the Court a proposed order which would allow the parties to unilaterally designate as confidential or highly confidential "any and all documents (whether written or graphic matter, no matter how produced, recorded, stored, or reproduced, including tape recordings or other electronically stored data, together with the programming instructions and other written material necessary to understand such tapes and data), things (including operational versions of software and software source code), deposition testimony, deposition exhibits, responses to interrogatories and requests for admissions and all other information and material produced or disclosed by a party or non-party to another party, regardless of whether produced formally or informally." (Defendant's Proposed Protective Order at p. 1).

As written, this proposed order is an umbrella order that will undoubtedly result in one or

both parties returning regularly to this Court to settle discovery disputes as to the classification of documents.

  1. Expanse Has Already Agreed To A Protective Order For Defendant's Source Code.

In the event that the Court refuses to adopt Catalina's proposed order, Catalina has asked the Court to create a protective order for its software limiting its viewers to outside counsel and/or independent experts (Proposed Order at p. 2). In fact, Catalina tells the Court that it made such an offer to Expanse already, but that Expanse has requested that others be allowed to perform a review of software as well.

This is all true. However, Catalina curiously fails to advise the Court that Expanse did agree – in writing – to the very thing that it now asks the Court to rule on. (see July 11, 2003 email from Ed Goldstein to Paul V. Storm et al., attached hereto as Exhibit B). This email was sent 10 days before Catalina's Motion was filed.

  2. The Proposed Protective Order Is Unlawfully Vague.

Catalina's proposed order is two-tiered with the designations "confidential" and "highly confidential". Catalina details how the categories will be treated differently (the only difference being that a party can designate two "in house" people to view the confidential documents), but gives no guidance as to what types of documents or other tangible things would fall into either category.

In such a two-tiered approach, the protective order needs to give guidance as to what classifications of documents it protects. For instance, the Northern District of Illinois upheld a protective order with the following language:

> As used in this Order, "confidential material" shall refer to any document, or any portion thereof, which contains information that is a trade secret or other confidential research, development or commercial information, within the meaning of Rule 26(c)(7), Fed. R. Civ. P.

THK America Inc. v. NSK Corporation, 157 F.R.D. 637, 641 (N.D. Ill. 1993).

But when defendants began classifying large quantities of discovery as Attorney's Eyes Only, the Court forced then to reclassify most of those documents, holding that "a "highly confidential" or "Attorney's Eyes Only" designation should rarely be used. "Defendants state that the standard used by them in designating documents as "Attorney's Eyes Only" is whether disclosure of the documents to defendants' competitors would be competitively damaging. Such documents, defendants argue, are "extremely confidential."  This is not an appropriate standard, and never was." Id. at 643.

Because Catalina's Proposed Order gives no guidance whatsoever as to what documents would fall into which category, it should be rejected by this Court.

### B.  CONCLUSION

But for the computer software and/or source code, Catalina has (1) not demonstrated any trade secrets that need protection, (2) not proven specific harm that would come from disclosure, (3) not detailed the items or documents it wishes to protect, and (4) not detailed which items deserve which level of protection.

Under the circumstances, Catalina simply has failed to meet its heavy burden and its motion for protective order should be denied.

Respectfully Submitted,

Dated: July 30, 2003

Of counsel:

| | |
|---|---|
| Edward W. Goldstein | Steven M. Coren |
| Jody M. Goldstein | Kaufman, Coren, & Ress, P.C. |
| GOLDSTEIN & FAUCETT, LLP | 1525 Locust Street, 17th Floor |
| 1177 West Loop South, Suite 400 | Philadelphia, PA 19102 |
| Houston, TX 77027 | Telephone: (215) 735-8700 |
| Telephone: (713) 877-1515 | Facsimile: (215) 735-5170 |
| Facsimile: (713) 877-1737 | |

Jonathan T. Suder
Edward E. Casto, Jr.
Friedman, Suder & Cooke
Tindall Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas 76102
(817) 334-0400 - Telephone
(817) 334-0401 - Facsimile

ATTORNEYS FOR PLAINTIFF