IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |   | |
|---|---|---|---|
| EXPANSE NETWORKS, INC. | § | | |
| | § | | |
| PLAINTIFF, | § | | |
| | § | | |
| vs. | § | C.A. NO. 02-CV-2857 | |
| | § | | |
| CATALINA MARKETING CORP., | § | | |
| | § | | |
| DEFENDANTS. | § | | |

# DEFENDANT CATALINA MARKETING CORPORATION'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Defendant Catalina Marketing Corp. has asked the Court to issue a Protective Order in this case pursuant to Federal Rule 26(c), to protect trade secrets and other confidential business information in this patent infringement case, in an effort to reduce the number of times that this Court must be requested to rule on protection of individual items being sought in the course of discovery.

### A.    Introduction

Expanse Networks, Inc. ("Plaintiff") has sued Catalina Marketing Corporation ("Defendant") for patent infringement in this Court, alleging that some of Defendant's systems infringe on United States Patent No. 6,216,129, which is assigned to Plaintiff.

On April 25, 2003, Plaintiff served their first discovery requests on Defendant. Upon reviewing some of the discovery requests, it became obvious to Defendant that some of the information being sought by Plaintiff in this case, while relevant, was confidential and/or trade secret information of Defendant. While Defendant understands the necessity of producing responsive documents in response to discovery requests, there was concern about producing

documents that, while responsive, were confidential or trade secret information. Additionally, although it was not specifically requested by Plaintiff, Defendant offered to make their software code available to Plaintiff for review in an effort to show that Defendant does not infringe Plaintiff's patent. In an effort to enable Defendant to produce their proprietary software code and other responsive discovery documents to Plaintiff without risking exposure of their competitive business information, or without the necessity of both parties having to apply to the Court for a ruling on scope of access every time a responsive document was confidential or secret, Defendant contacted Plaintiff and proposed the implementation of a protective order. On April 29, 2003, the Defendant sent Plaintiff the proposed protective order for their review. (*See* email delivering draft protective order to Plaintiff's counsel for review, and delivery verification notice, attached hereto as Exhibit A).

Plaintiff contacted Defendant in May and indicated that they had only minor revisions to the protective order, but wished to know if the software Defendant had offered for review would be in the class of highly confidential documents limited to review by outside persons only, or if it could be reviewed by persons in the employ of Plaintiff. While Plaintiff is not a direct competitor with Defendant, Plaintiff's business is providing software for use in the advertising industry, for use by persons who directly compete with Defendant. Charles Eldering, Plaintiff's Chairman and Chief Technology Officer, currently holds 15 U.S. patents, many for advertising-related software and systems, and has 27 other published U.S. patent applications in this area of technology, and possibly many other pending patent applications that have not yet been published. (*See* listings of United States Patent and Trademark Office showing issued patents and published patent applications of Charles Eldering, attached hereto as Exhibit B).

Defendant considered Plaintiff's request, but was concerned that software developers in Plaintiff's employ could have difficulty in differentiating the knowledge they had before viewing Defendant's software from that acquired by reviewing Defendant's software. Therefore, Defendant sent Plaintiff a letter on June 19 indicating they would want to limit review of the software they had volunteered to provide to persons outside the employ of Plaintiff. (*See* June 19 letter from Defendant's counsel to Plaintiff's counsel, attached hereto as Exhibit C). Such a limitation would allow Plaintiff's attorneys to proceed with the case, but would not threaten the confidential and trade secret portions of Defendant's software.

Discussion ensued between counsel for Defendant and Plaintiff on the issue. Counsel for Defendant sought to have a signed agreed protective order in place prior to producing the software for review. Only at this point, in an unclear email, did Plaintiff imply they were opposed to the protective order in some form. Because Plaintiff had not previously indicated any concerns with the protective order beyond the persons allowed access to Defendant's software, Defendant sought input from Plaintiff as to exactly what Plaintiff's concerns were. (*See* email correspondence between Plaintiff's counsel and Defendant's counsel, July 9 – 14, 2003, attached hereto as Exhibit D). When, after one week, no input from Plaintiff was forthcoming, Defendant sought entry of a protective order from this Court, in an effort to move forward with this case.

B. Argument

The court has broad discretion to protect a party with a protective order on a showing of good cause. *See* FED. R. CIV. P. 26(c). Limitations on the revelation of trade secrets and confidential business information are grounds upon which a court can find good cause to issue a protective order limiting access to the information to specific persons to prevent use of information

obtained from court documents to harm the competitive standing of a litigant. *See Nixon v. Warner Communications*, 435 US 589, 598 (1978); *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991); *Littlejohn v. BIC Corp.*, 851 F.2d 673, 685 (3d Cir. 1988). In patent infringement cases, it is common for an "umbrella protective order" limiting access to certain types of documents, such as trade secrets or confidential business information produced in discovery. *See, e.g., Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 158 (3d Cir., 1993); *Cipollone v. Liggett Group, Inc.* 758 F.2d 1108, 1122 (3d Cir. 1986). Because a quantity of the information exchanged in patent infringement cases, especially those involving software, is secret or confidential, such an umbrella order prevents the need to obtain a ruling each time such a document needs to be produced, thereby reducing the burden on the Court in regards to discovery, not increasing it as Plaintiff's claim would result from putting such an order in place. Here, Defendant is not seeking to withhold information from Plaintiff, but only to limit the persons allowed to view confidential information to Plaintiff's counsel and outside experts. This is the most common type of protective order. *See, e.g.* 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedures* §2041 (2d ed. 1987). This would allow Plaintiff's counsel to proceed with their case while protecting Defendant's competitive business advantage. Such a protective order would also serve to protect Plaintiff's secret and confidential information from being viewed by persons in the employ of Defendant, as well. Such protection for trade secrets and confidential information is important, because "once trade secrets are made public, they can never be secrets again. *See Smith v. BIC Corp,* 869 F.2d 194, 199 (3d Cir. 1989).

Although Plaintiff states in their Response that they have agreed to protect Defendant's software and source code, they would not sign the proposed protective order, or indicate what

changes they sought to create a protective order that was acceptable for them to sign.  In their Response to Defendant's Motion for Entry of Protective Order, they imply that if the proposed protective order we provided were amended to specify that trade secret and confidential information was limited to review by outside counsel only, they would sign it.  However, the last email sent to Defendant's counsel indicates that they refuse such a scope.  This coupled with their lack of a response as to what would be acceptable, or any signed document agreeing to limit access to Defendant's software is what prompted Defendant to seek guidance from the Court.  (*See* email correspondence between Plaintiff's counsel and Defendant's counsel, July 9 – 14, 2003, attached hereto as Exhibit D).

Even if this Court would prefer to not issue such form of umbrella protective order limiting access to certain types of documents only to specific persons, but instead rule on each potentially confidential or secret document or testimony on an individual basis prior to production or deposition, Defendant, as stated in their Motion, would seek that such an order be put in place prior to their producing the software they proffered that would limit review of its software to opposing counsel and independent experts only.

Limiting review of this information to Plaintiff's counsel and independent experts would not harm Plaintiff's ability to have the information analyzed to determine the scope of Defendant's products, nor hamper Plaintiff's counsel in preparing their case, and would simultaneously protect Defendant's trade secrets and competitive business advantage.  *See Zenith Radio Corp. v. Matsushia Elec. Indus. Co.*, 529 F.Supp 866 (E.D. PA 1981).

### C. Conclusion

Defendant has shown that revelation of its trade secret and confidential business information to Plaintiff would inflict serious harm on its ability to continue to be competitive in the industry, whereas disclosing that information only to Plaintiff's counsel and independent experts would not work harm on the parties or the public. For these reasons, Defendant asks the Court to sign and issue the attached Protective Order, or a similar order that designates trade secret and confidential information as limited to access by Plaintiff's counsel and independent experts. In the alternative, Defendant would ask the Court to issue a confidentiality order that would limit review of its software to opposing counsel and independent experts only.

Respectfully Submitted,

Dated: August 4, 2003

Camille M. Miller
COZEN & O'CONNOR.
1900 Market St.
Philadelphia, PA 19103
Telephone No. (215) 665-7273
Facsimile No. (215) 665-2013

Paul V. Storm
Dawn C. Wolff
STORM & HEMINGWAY, L.L.P.
8117 Preston Road, Suite 460
Dallas, TX 75225
Telephone No.: (214) 292-8300
Facsimile No.: (214) 292-8999

**ATTORNEYS FOR DEFENDANT
CATALINA MARKETING CORP.**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing REPLY IN SUPPORT OF MOTION FOR PROPOSED PROTECTIVE ORDER was served upon the attorneys of record of all parties to the above cause by facsimile and first class mail in accordance with Federal Rules of Civil Procedure, on this 4th day of August, 2003, addressed as follows:

**Attorneys for Plaintiff**

Steven M. Coren, Esq.
1525 Locust St., 17th Floor
Philadelphia, PA 19102
Tel: (215) 735-8700
Fax: (215) 735-5170

Edward W. Goldstein
GOLDSTEIN & FAUCETT
1177 West Loop South, Suite 400
Houston, TX 77027
Tel: (713) 877-1515
Fax: (713) 877-1737

_____
Catherine M. Branka
Paralegal