THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EXPANSE NETWORKS, INC. | § | |
| PLAINTIFF, | § § | |
| vs. | § § § | C.A. NO. 02-CV-2857 |
| CATALINA MARKETING CORP., | § § | |
| DEFENDANTS. | § § | |

**DEFENDANT CATALINA MARKETING CORPORATION'S
MOTION TO COMPEL DISCOVERY RESPONSES**

Defendant Catalina Marketing Corp. ("Catalina" or "Defendant") moves to compel Plaintiff Expanse Networks, Inc. ("Expanse" or "Plaintiff") to fully respond to Catalina's discovery requests.

## I. INTRODUCTION

Catalina is in the business of providing targeted marketing services utilizing consumer purchase history information. Expanse was formerly was in the business of developing targeted television advertising and has gone out of business along with its competitors in that market. Expanse has sued Catalina for patent infringement, alleging that some of Catalina's systems infringe United States Patent Nos. 6,298,348 ("the '348 patent") and 6,216,129 ("the '129 patent"), which are assigned to Plaintiff. The '348 and '129 patents are directed to systems for selecting advertisements for consumers based on a consumer profile.

Catalina served its first set of interrogatories and document requests on Expanse on May 1, 2003. See Exhibits 1 & 2. Expanse responded to these requests on June 3, 2003. See Exhibits 3 & 4. However, as mentioned in the letter from Eric Kraeutler to the Court, dated May

6, 2004, Expanse's responses were inadequate in many respects. Several specific inadequacies are discussed below.

## II. DISCOVERY REQUESTS

**A. INTERROGATORY 1**-- Identify each product made or used by Catalina that you contend infringes the patents in suit and identify each claims of the patents in suit allegedly infringed by each product.

**Response:** Expanse objects to this interrogatory as premature since discovery is still in its infancy and therefore Expanse's contentions may be subject to change. Subject to the foregoing objections, Expanse responds as follows:

At this time, Expanse believes that the following products infringe claims of the patents in suit; products and services using the Catalina Marketing Network (including, but not limited to, the products and services offered by the Retail Services division as the Customer-Centric Insights and Marketing Solutions products); Catalina Marketing Retail Services programs (including Customer Retention and Loyalty, Channel Erosion, Private Label, Event and Promotional Marketing, Ethnic Marketing, Threshold Marketing, and Category-Based programs); and the Catalina Market Logic product.

At this time, Expanse believes claims 1, 17, 21, and 29 of the '348 patent as well as claims 1, 22 and 30 of the '129 patent have been and continue to be infringed by Catalina.

In Interrogatory 1, Expanse was asked to "Identify each product made or used by Catalina that you contend infringes the patent in suit and identify each claim of the patents in suit allegedly infringed by each product." In response, Expanse identified several Catalina products that it alleges "infringe claims of the patents in suit." Expanse also stated in response that it believes Catalina infringes all of the independent claims of the '348 patent and all but one of the independent claims of the '129 patent. However, the Interrogatory explicitly asks Expanse to identify which products it alleges infringe each of the claims.

The requested information is necessary to aid Catalina in preparing its defense to Expanse's allegations and to respond more fully to Expanse's document requests. The claims of the '348 and '129 patents are quite different and there is no way that Expanse can contend in good faith that every Catalina product infringes some or all of the claims of both patents.

Further, if Expanse performed the level of preliminary investigation required under Rule 11 before filing this action, then Expanse should be able to easily provide Catalina with the requested information. Therefore, Catalina respectfully requests that the Court order Expanse to identify, separately for each patent claim which it alleges is infringed, the products and services of Catalina which it asserts infringe the claim.

> **B. INTERROGATORY 6—** For each claim of the patents in suit alleged to be infringed by any Catalina product, provide a claim chart construing each element of such claim and identifying the support for such construction based on intrinsic or extrinsic evidence, identifying each part in any Catalina product that corresponds to each element of such claim, and stating whether the allegation of infringement is literal or under the doctrine of equivalents.
>
> **Response:** In response to Interrogatory 6, Expanse provided a claim chart which is reproduced in Exhibit 3.

Interrogatory 6 requests Expanse to provide, for each allegedly infringed claim in the patents in suit, a claim chart construing each claim element and identifying each part in each allegedly infringing product that corresponds to each element of such claim. Expanse provided a claim chart with a number of quotes from Catalina's website which are apparently intended to show infringement of the claims. However, Expanse failed to separate its identification of corresponding parts by product, as requested in the interrogatory. As discussed above, this information is necessary to aid Catalina in preparing its defense to Expanse's allegations and in determining the documents sought by Expanse, and this information should not be difficult for Expanse to provide if its attorneys performed a reasonable investigation before filing suit. Therefore, Catalina requests that Expanse be ordered to provide a claim chart for each allegedly infringing product, identifying the part of each product alleged to correspond to each claim element.

> **C. DOCUMENT REQUEST NO. 9--** All source code, including, but not limited to commented source code, pertaining to all features and functions of all product(s) that

embody or contain any of the products or methods disclosed in the '129 and/or '348 patents.

**Response:** Expanse objects to this request to the extent that it seeks information protected by the attorney-client privilege or the rules governing work product. Expanse objects to this request as vague and ambiguous to the extent it requests "all source code," a term which is undefined. Expanse objects to the request as overly broad and unduly burdensome as its asks for source code "pertaining to all features and functions of all product(s)."

Subject to the forgoing objections and the General Objections, Expanse will produce non-privileged, non-protected, responsive documents in its possession, custody or control.

In Request No. 9 Catalina sought "all source code, including, but not limited to commented source code, pertaining to all features and functions of all product(s) that embody or contain any of the products or methods disclosed in the '129 and/or '348 patents." Expanse objected that this request is vague and ambiguous with respect to the phrase "all source code." However, "source code" has an established and well-known meaning within the computer programming community and is in no way ambiguous. *See, e.g.* www.computeruser.com/resources/dictionary/dictionary.html, "Source Code--A computer program written by a programmer in a source language." (a copy of this webpage is attached as Exhibit 5). Expanse also objected to the request as "overly broad and unduly burdensome as it asks for source code "pertaining to all features and functions of all product(s)." However, the request is clearly limited to products that embody or contain the products or methods disclosed in the '129 and/or '348 patents. Expanse has not made any showing that the source code for the limited products is voluminous. The patentee's commercial embodiment of a patented invention is clearly relevant in a patent infringement suit and is not overly broad or unduly burdensome. Therefore, Catalina respectfully requests that the Court order Expanse to produce the requested source code.

D. **DOCUMENT REQUEST NO. 10**--All documents and things that refer to or relate to the first disclosure of the subject of the patents in suit to any person not employed by Plaintiff.

**Response:** Expanse objects to this request as overly broad and unduly burdensome to the extent it seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

Expanse objects to this request to the extent it seeks information protected by the attorney-client privilege or the rules governing work product.

Subject to the forgoing objections and the General Objections, Expanse will produce non-privileged, non-protected, responsive documents in its possession, custody or control.

Defendant's Request No. 10 requests documents and things that refer to or relate to the first disclosure of the subject of the patents in suit to any person not employed by Plaintiff. Expanse objected to this request "to the extent is seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence." However, information related to the first disclosure of the subject inventions is relevant to whether any statutory bar applies. Therefore, all information sought by this request is relevant and Expanse should be ordered to fully respond to the request.

E. **DOCUMENT REQUEST NO. 12**-- All documents and things that refer or relate to or constitute any prior art or search for prior art with respect to the subject matter of the patents in suit.

**Response:** Expanse objects to this request to the extent it seeks information protected by the attorney-client privilege or the rules governing work product.

Expanse objects to this request as overly broad and unduly burdensome to the extent it seeks production of documents "that refer or relate to or constitute any prior art or search for prior art." Requiring the production of every prior art item is completely unreasonable and overly burdensome.

Subject to the forgoing objections and the General Objections, Expanse will produce non-privileged, non-protected, responsive documents in its possession, custody or control.

Defendant's Request No. 12 seeks documents and things that refer or relate to or constitute any prior art or search for prior art with respect to the subject matter of the patents in suit. Expanse objected that this request is overly broad and unduly burdensome and that

"[r]equiring the production every [sic] prior art item is completely unreasonable and overly burdensome." However, prior art documents are extremely relevant to the validity and scope of Expanse' patents. Therefore, it is reasonable and not unduly burdensome to require production of all prior art and related documents in Plaintiff's possession, custody or control, and Plaintiff should be compelled to produce all such documents. Further, Expanse has made no showing that responsive documents in its possession, custody or control are voluminous and burdensome. Without any idea of volume or category, Expanse has provided no basis to narrow the request.

### F. INVENTOR NOTEBOOKS

**DOCUMENT REQUEST NO. 6**-- All documents referring to or evidencing the conception and reduction to practice, including without limitation, the date of conception and reduction to practice, of any product(s) that embody or contain any of the products or methods disclosed in the patents in suit.

**Response:** Expanse objects to this request to the extent it seeks information protected by the attorney-client privilege or the rules governing work product.

Subject to the forgoing objections and the General Objections, Expanse will produce non-privileged, non-protected, responsive documents in its possession, custody or control.

In its Request for Production No. 6, Catalina requested all documents "referring to or evidencing the conception and reduction to practice, ... of any products that embody or contain any of the products or methods disclosed in the patents in suit." This request would clearly encompass any inventor's notebooks for the inventions in the patents in suit. During Defendant's first deposition of Dr. Eldering, he testified about inventor's notebooks that he kept related to "the whole set of inventions I was pursuing." See Exhibit 6, (2/24/04 deposition of Eldering) 68:17-23. Later in the deposition Eldering said he would "get [the notebooks] out and copy the appropriate pages." *Id.* at 86:14-23. Counsel for Catalina then clarified that Catalina would like to see the whole note book. *Id.* at 86:24-87:2. However, Expanse subsequently produced only one notebook which covered a time period ending three days before the first

patent application related to the patent in suit was filed. See Exhibit 7, (4/28/04 deposition of Eldering), 171:2-23. Dr. Eldering testified that a subsequent notebook (covering the time during which the patent applications leading to the patents in suit were filed) existed, but that he "looked through that and it has no relevant material." *Id.* 172:1-16.

Regardless of Dr. Eldering's opinion that his subsequent inventor notebooks are not relevant, Catalina has properly requested and is entitled to those materials. Expanse has shown no reason why the requested document should not be produced. Therefore, Catalina requests that Expanse be ordered to produce the inventor notebook.

### G. LICENSING AND ASSIGNMENT NEGOTIATION DOCUMENTS

**DOCUMENT REQUEST NO. 2--** All documents referring to the '129 Patent and '348 patents, including without limitation: (i) internal correspondence and memoranda; (ii) correspondence with persons or entities not employed by Plaintiff; (iii) all documents submitted to or received from the U.S. Patent and Trademark Office; and (iv) all documents pertaining to the preparation and prosecution of any application leading to the issuance of the patents in suit, including any pending or abandoned applications related to the patents in suit, or patents or applications that claim priority to the patents in suit.

**Response:** Expanse objects to this request as overly broad and unduly burdensome to the extent it seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Further, this request is overly broad in that it seeks documents which are outside the custody or control of Expanse.

Expanse objects to this request to the extent it seeks information protected by the attorney-client privilege or the rules governing work product.

Subject to the forgoing objections and the General Objections, Expanse will produce non-privileged, non-protected, responsive documents in its possession, custody or control.

**DOCUMENT REQUEST NO. 15--** All documents that refer to or evidence any license agreement, offers to license, license negotiations, license payment structures or royalty rates for any product(s) that embody or contain any products or inventions of the patents in suit between Plaintiff and anyone.

**Response:** Expanse objects to this request to the extent it seeks information protected by the attorney-client privilege or the rules governing work product.

Subject to the forgoing objections and the General Objections, Expanse will produce non-privileged, non-protected, responsive documents in its possession, custody or control.

In Document Request 15, Defendant seeks all documents relating to "any license agreement, offers to license, license negotiations, license payment structures or royalty rates for any product(s) that embody or contain any products or inventions of the patents in suit between Plaintiff and anyone." Additionally, in Request No. 2, Defendant requests "All document referring to the '129 Patent and '348 patents [sic], including without limitation: ... (ii) correspondence with persons or entities not employed by Plaintiff." During the deposition of Plaintiff's designated 30(b)(6) witness, Dr. Charles Eldering, Dr. Eldering testified that Expanse had been in licensing and/or assignment negotiations with a number of companies regarding a license or assignment of Expanse's patent portfolio, including Acacia, Intellectual Ventures, Landmark Communications, Next Level Communications, Philips, Liberty Media, and Time Warner. Catalina believes that there were very likely correspondence and other documents responsive to Requests Nos. 2 and 15 that were involved in these negotiations, none of which have been produced by Expanse. Therefore, Catalina requests that the Court order Expanse to produce all documents responsive to Document Requests Nos. 2 and 15, including all documents that refer or relate to any license or assignment negotiation involving the patents in suit.

## H. IDENTIFICATION OF DOCUMENTS BY CATEGORY

On April 14, 2004, Expanse produced a set of 6 CD-roms full of electronic versions of documents. A litigation support company informed Catalina that the information on the CD-roms would equal about 70,000 pages if printed. The CD-roms are labeled <u>Catalina Litigation Volume I through VI</u>. Obviously, these disks were prepared for litigation purposes and the information is not similarly organized in the ordinary course of business. Expanse has made no attempt to organize the information on the disks to correspond to the categories of Catalina's requests. Further, there appears to be a considerable amount of the material which is not

responsive to any of Catalina's requests. It appears that the production by Expanse is an attempt to hide the ball by producing an enormous amount of material and failing to organize and label the material in any useful way. Accordingly, Catalina requests that Expanse be ordered to identify all documents on the CD-roms by the category of requested document to which they are responsive. *See Stiller v. Arnold*, 167 F.R.D. 68, 71 (N.D. Ind. 1996) ("Rule 34(b) places the obligation on the responding party to "organize and label" the documents which are produced for inspection. Producing 70,000 pages of documents in no apparent order does not comply with a party's obligation under Rule 34(b).").

### I. CONTINUED DEPOSITION OF DR. CHARLES ELDERING

As Catalina discussed in its letter to the Court dated May 6, 2004, Expanse has wrongfully refused to produce Dr. Charles Eldering for continued deposition examination. On April 28, 2004, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Catalina took the deposition of Expanse through its designee, Dr. Eldering, in the offices of Expanse's counsel in Houston, Texas. After five hours-43 minutes of examination, Expanse's counsel requested that the deposition be adjourned to permit Dr. Eldering to make his scheduled flight to Philadelphia. Catalina agreed to the adjournment, as a courtesy to Dr. Eldering, based upon Expanse's acknowledgement that Catalina had not yet exhausted the deposition time limit. At the time of adjournment, Catalina had not yet completed its examination of Dr. Eldering on certain key topics, including claim construction, Expanse's infringement allegations, and damages.

On May 4, 2004, Catalina approached Expanse's counsel to discuss scheduling the remainder of the Rule 30(b)(6) deposition. Expanse's counsel initially agreed to consider scheduling a further examination of Dr. Eldering, but subsequently indicated that Expanse was disinclined to permit the completion of the 30(b)(6) deposition unless it occurred within the

Motion to Compel--Page 9

discovery period. Catalina agreed that it would complete the deposition by the close of discovery, provided Dr. Eldering was made available. On May 6, 2004, following a settlement conference before Magistrate Judge Rueter, another Expanse counsel flatly refused to produce Mr. Eldering for further Rule 30(b)(6) testimony, unless Catalina would agree to allow Expanse out of its prior agreement not to take a deposition of Mike Hendry and to permit the deposition after the discovery deadline.

Catalina believes it is entitled, under the Federal Rules and its agreement with Expanse, to continue examining Dr. Eldering to the full seven-hour time limit. Catalina is not under any obligation to provide additional discovery to Expanse in order to complete its examination of Dr. Eldering. Accordingly, Catalina requests that the Court order Expanse to produce Dr. Eldering for deposition by Catalina for the remaining one hour and seventeen minutes of its seven-hour time limit.

### III. CONCLUSION

As outlined above, Expanse has failed to provide adequate responses to proper discovery requests propounded by Catalina. Therefore, Catalina requests that the Court order Plaintiff to provide complete responses to Interrogatories 1 & 6 in Catalina's First Set of Interrogatories, to produce all documents requested in Requests Nos. 2, 9, 10, 12, & 15 of Catalina's First Requests for Production, to organize and label the 70,000 pages of documents produced in CD-rom format, to produce all inventor notebooks of Dr. Eldering, and to produce Dr. Eldering for completion of his deposition.

Respectfully Submitted,

Dated: May 11, 2004

*[signature]*

Eric Kraeutler
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
Telephone No.: (215) 963-5000
Facsimile No.: (215) 963-5001

John W. MacPete
Paul V. Storm
Robin Barnes
George M. Tompkins
STORM & HEMINGWAY, L.L.P.
8117 Preston Road, Suite 460
Dallas, TX 75225
Telephone No.: (214) 292-8300
Facsimile No.: (214) 292-8999

**ATTORNEYS FOR DEFENDANT
CATALINA MARKETING CORP.**

## CERTIFICATE OF CONFERENCE

I hereby certify that I John W. MacPete, counsel for Defendant Catalina Enterprises, Inc. conferred with Jody and Ed Goldstein, counsel for Plaintiff regarding the relief requested in the forgoing Motion. The parties, after a reasonable effort, were not able to reach an agreement regarding the relief requested in this motion.

_____
John W. MacPete

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing Defendant Catalina Marketing Corporation's Motion To Compel Discovery Responses was served upon the attorneys of record of all parties to the above cause in accordance with Federal Rules of Civil Procedure, on this 11th day of May, 2004, addressed as follows:

### VIA HAND DELIVERY

Steven M. Coren, Esq.
KAUFMAN, COREN & RESS, P.C.
1525 Locust Street, 17th Floor
Philadelphia, PA 19102
Tel.: (215) 735-8700
Fax: (215) 735-5170

### VIA FIRST CLASS MAIL

Edward W. Goldstein, Esq.
GOLDSTEIN & FAUCETT, L.L.P.
1177 West Loop South, Suite 400
Houston, TX 77027
Tel.: (713) 877-1515
Fax: (713) 877-1737

_____
Eric Kraeutler