IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EXPANSE NETWORKS, INC., | § § | |
| PLAINTIFF, | § § | |
| vs. | § § | C.A. NO. 02-CV-2857 |
| CATALINA MARKETING CORP., | § § | |
| DEFENDANT. | § § | |

## DEFENDANT CATALINA MARKETING CORP.'S OPPOSITION TO PLAINTIFF EXPANSE NETWORKS' LETTER MOTION TO COMPEL

Plaintiff has filed a letter motion requesting an extension of discovery of 45 days for certain discovery to be compelled during that time. Plaintiff's motion should be denied. Plaintiff has been dilatory in pursuing discovery and should not be rewarded with an extension of time. Catalina has not been stonewalling Plaintiff and, instead, has been promptly producing documents and witnesses as they have been reasonably identified by Plaintiff.

## FACTUAL BACKGROUND

This is a patent infringement case in which Plaintiff Expanse Networks, Inc. accuses Catalina Marketing Corp. of infringing U.S Patent 6,216,129 ('129 patent) and U.S. Patent 6,298,348 ('348 patent). The '129 patent relates to an advertisement selection system, while the '348 patent relates to a consumer profiling system. Both patents were severely limited, in the U.S. Patent Office, by Expanse before they were issued. For example, the '129 patent applies to a situation where the system selects between one of at least two advertisements using a very particular algorithm. The '348 patent is limited to a particular methodology for creating consumer profiles.

Plaintiff sued Catalina Marketing, a publicly traded corporation, after Catalina made it clear that it was not interested in purchasing Plaintiff's patents or any other business arrangement with Plaintiff. During those discussions, Plaintiff did not indicate a belief that Catalina was infringing either patent. Throughout this case, which will be pending two years this week, Plaintiff has done very little to prove its case. For example, Plaintiff only recently began analyzing source code provided by Catalina in 2003 to determine whether it supports the claim of infringement. Further, the date for the first deposition noticed by Plaintiff was less than one month from the close of discovery. Also, despite acknowledging legitimate confidentiality concerns by both parties, Plaintiff did not agree to Catalina's proposed protective order, nor propose one of its own until the very end of the discovery. Now, Plaintiff takes the position that it is entitled to more time as a reward for its dilatory approach to the case.

## ARGUMENT

Plaintiff's letter asks the Court to order the deposition of Mike Hendry. In doing so, Plaintiff has substantially misrepresented the record. First, Plaintiff noticed four depositions for the Monday, Tuesday and Wednesday of the last week of discovery. These depositions were first noticed without consultation with Catalina twelve days before they were to commence. These depositions were the 30(b)(6) of Catalina, a personal deposition of Eric Williams, a personal deposition of Mike Hendry, and a personal deposition of Jay Parsons. Mr. Williams is the senior vice president and the chief technology officer of Catalina. Mr. Hendry is a corporate senior vice president and the president of Catalina Direct Marketing Services and has his office in California. Mr. Parsons is the executive vice president of Catalina Marketing Manufacturer Services. Despite the short notice and the busy schedules of three of Catalina's top executives, Catalina informed Plaintiff that it would comply with those depositions as noticed.

Four days before those depositions were to commence, Plaintiff indicated it would have difficulty taking the depositions on Monday because the attorney scheduled to take the deposition, Jody Goldstein, apparently was unable to find childcare for her young children. It is Catalina's understanding that Mr. Goldstein, Expanse's lead counsel, was unable take the depositions on Monday because he was on vacation, and apparently none of the other attorneys for Expanse were available either. If Plaintiff had not waited until the last week of discovery to attempt to take these depositions, there would have been no issue to address. Plaintiff could have simply withdrawn its notices to conform with its availability and to re-notice them for later in discovery. That was not an easy option here because Plaintiff had waited so long to attempt to schedule these depositions. Plaintiff requested that its scheduling problem be resolved by Catalina agreeing to extend the discovery period, which Catalina declined to do.

At that point, <u>Plaintiff</u> suggested that the deposition of Parsons be dropped and the other three depositions be taken on Tuesday and Wednesday of the last week of discovery. Catalina agreed to this proposal, but requested that the deposition notice of Hendry, who was flying in from California, be dropped instead of Parsons, to which Plaintiff agreed. To accommodate Plaintiff's scheduling problems, Mr. Williams agreed to start his deposition and the 30(b)(6) of Catalina that 8:00 a.m. on Tuesday and proceed until noon, when he had to take a break for another scheduled meeting that he was required to attend. The depositions were scheduled to resume at 4:00 p.m. Tuesday afternoon and proceed until completed. After reaching this agreement, the depositions proceeded as agreed.

**Catalina has not been dilatory of the document production.**

In an attempt to bolster its request for an extension of discovery, Plaintiff alleges various failures by Catalina. Again, Plaintiff mischaracterizes the record. In May of 2003, Plaintiff served

a broad request for production of documents on Catalina, which encompassed nearly every document in the operational files of the company. At the time, Catalina objected to the breadth of the requests and agreed to produce source code which would help Plaintiff understand Catalina's operations and possibly focus the discovery process. This source code was ultimately delivered in October 2003 after this Court entered a limited protective order directed to the source code. Despite having the source code for months, Plaintiff made no attempt to analyze it to determine how the system worked or identify what activities may actually be at issue in this case. Catalina timely objected to Plaintiff's requests because they were not tailored to the issues in the case and would have involved production of likely millions of pages of information. To provide context to this issue, Catalina maintains the largest database of grocery purchases in the United States, and processes in the neighborhood of 100 million transactions per week. Catalina explained to Plaintiff its view that none of its data processing activities involved the mathematical selection of advertisements or the creation of a consumer demographic profile from purchase data. In response, Plaintiff did not articulate either an interpretation of the patent which would support a claim of infringement or an identification of what information it had about Catalina that led to believe there was a claim of infringement, which would have enabled Catalina to focus discovery responses. Further, after taking the first deposition of Plaintiff in February of this year, Catalina produced several thousand pages of documents about its activities. These documents included information on how the Checkout Direct program worked and the data structures involved. This was adequate information both for Plaintiff to focus its discovery requests or to articulate its claim of infringement. Plaintiff did neither.

Amazingly, Plaintiff has attempted to make Catalina look dilatory when Catalina has acted promptly to produce documents once they were clearly identified as being requested. Specifically,

during the deposition of Eric Williams last week, Plaintiff asked for a training manual for the Checkout Direct system. A user's manual and a user's overview guide were identified, copied and produced in approximately two hours for use in the deposition. This, despite the fact that numerous documents describing the operation of the Checkout Direct system had already been produced. In fact, the user's overview guide had previously been produced to Plaintiff as Bates Numbers CATA 009528 - 009573, and documents incorporating the information in the user's manual had also been previously produced as Bates Number CATA 10053 - 10248. *See* Exhibits 1 and 2. Thus, Plaintiff's suggestion that important information was withheld so it could not be used at the deposition is simply false. Rather, it is obvious that Plaintiff had failed to look at a substantial portion of the documents they had previously received.

Plaintiff also makes much the fact that one particular document showing a matrix was provided during Eric Williams' deposition. This, again, is evidence of Catalina's prompt production of documents once they had been identified as pertinent, not proof of improper conduct as suggested by Plaintiff. Specifically, during the deposition of Charles Eldering in February, he testified that processes such as those used by Catalina, and reflected in the document in question, are outside the scope of his patent and therefore not infringing. After additional documents were produced, Plaintiff made no attempt to describe how the claim of infringement could be supported or what additional documents Plaintiff needed. Dr. Eldering's deposition was taken again as the 30(b)(6) designee of Expanse. In that deposition, Dr. Eldering attempted to testify as to how the patent could be interpreted in a way to support a claim of infringement. This testimony was directly contrary to his earlier testimony, and utilized a completely new and erroneously broad claim construction. His new position suggested that such database search matrices might be relevant. He made no attempt to explain his change of position. Nevertheless, Catalina began identifying documents made pertinent

in view of Expanse's flip-flop. In this process, Catalina discovered that there were well over 30,000 specific matrices for which records existed. These matrices extend to the beginning of the Checkout Direct program in the early nineties. A printout of each matrix will be between 10 and 20 pages. Thus, providing copies of all of them would have resulted in producing between 300-600 thousand pages. Plaintiff confirmed that it was not interested in such a massive production, yet Catalina offered to produce either all of them, or any particular subset, at Plaintiff's option. At the Eric Williams deposition, the parties agreed on what would be produced and that production is in progress. Thus, the recent production of the matrices is a result of Plaintiff's shifting position in the attempt to assert infringement combined with Catalina's prompt production of documents when they have been reasonably identified. It does not reflect improper conduct by Catalina.

As with the documents described above, Catalina has promptly produced patent licenses when recently identified as being sought by Plaintiff in an effort to avoid further squabbling over documents. Catalina had timely objected to the particular request and Plaintiff had not made any attempt to address those objections or seek the licenses until the Williams' deposition. Catalina's willingness to compromise after discussion between counsel is not evidence of improper conduct.

In contrast to Catalina's prompt production of documents after conferring with Plaintiff to identify specific documents sought, Plaintiff has continuously failed to turn over documents despite repeated requests. The most egregious example of this conduct is the failure to turn over Dr. Eldering's inventor's notebook for the time period during which the patents-in-suit were filed. Catalina clearly requested such documents in requests for production in 2003. Such notebooks are clearly relevant and subject to production. Defendant raised the fact, at Dr. Eldering's first deposition in February 2004, that no inventor's notebooks had been produced. Thereafter, it took a month for Plaintiff to produce some inventor's notebooks, but Plaintiff failed to turn over the most

relevant notebook (for the time period during filing of the patent-in-suit.) Defendant raised the issue again prior to and at the Expanse 30(b)(6) deposition in April 2004. To date, Plaintiff has still not produced that inventor's notebook, and Defendant has had to file a Motion to Compel with this Court seeking production of probably the most relevant Expanse document in this case.

As illustrated above, it is Plaintiff, not Catalina, that has engaged in unreasonable discovery conduct meriting further action by this Court.

## CONCLUSION

This is a strike suit against a publicly-traded corporation, by a licensed patent agent attempting to use the expense of litigating patents to extort costs of defense from Catalina. Plaintiff knows that it has no legitimate claim against Catalina, because there is no infringement under the reasonably narrow description of the inventions given to the Patent Office, and testified about at Dr. Eldering's first deposition, or because the patent is invalid over Catalina's own prior patented activities under the extremely broad claim construction Dr. Eldering used when he flip-flopped at the later 30(b)(6) deposition. Because this suit is a shakedown, Plaintiff has been prosecuting this case on the cheap -- waiting until the last month of a two year discovery process to initiate basic discovery and depositions. Plaintiff should not be rewarded for its dilatory prosecution of this suit with additional time for discovery, especially when the

focus of that discovery is geared more towards harassing Defendant into a cost of defense settlement rather than preparing to try the case. Plaintiff's motion should be denied.

Respectfully Submitted,

Dated: May 12, 2004

*/s/ Eric Kraeutler*
Eric Kraeutler
John V. Gorman
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone No.: (215) 963-5000
Facsimile No.: (215) 963-5001

John W. MacPete
Paul V. Storm
Robin Barnes
George M. Tompkins
STORM & HEMINGWAY, L.L.P.
8117 Preston Road, Suite 460
Dallas, TX 75225
Telephone No.: (214) 292-8300
Facsimile No.: (214) 292-8999

**ATTORNEYS FOR DEFENDANT
CATALINA MARKETING CORP.**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing DEFENDANT CATALINA MARKETING CORP.'S OPPOSITION TO PLAINTIFF EXPANSE NETWORKS' LETTER MOTION TO COMPEL was served upon the attorneys of record of all parties to the above cause via facsimile and first-class mail in accordance with Federal Rules of Civil Procedure, on this 12th day of May, 2004:

**Attorneys for Plaintiff**

Steven M. Coren, Esq.
1525 Locust St., 17th Floor
Philadelphia, PA 19102
Tel: (215) 735-8700
Fax: (215) 735-5170

Edward W. Goldstein
GOLDSTEIN & POLASEK
1177 West Loop South, Suite 400
Houston, TX 77027
Tel: (713) 877-1515
Fax: (713) 877-1737


_____
Eric Kraeutler