IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EXPANSE NETWORKS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  02-CV-2857 |
| | § | |
| CATALINA MARKETING CORP., | § | |
| | § | |
| Defendant. | § | |

### PLAINTIFF EXPANSE NETWORKS, INC.S OPENING CLAIM CONSTRUCTION BRIEF

Plaintiff, Expanse Networks, Inc. ("Expanse"), files this opening claim construction brief for the purpose of presenting its proposed claim construction for the claims asserted from United States Patents Nos. 6,216,129 ("the '129 patent") and 6,298,348 ("the '348 patent").

## TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................. 5

   A. THE '348 PATENT ........................................................................................ 5

   B. THE '129 PATENT ........................................................................................ 6

II.  THE LAW OF CLAIM CONSTRUCTION ....................................................... 6

   A. PLAIN AND ORDINARY MEANING ......................................................... 6

   B. INTRINSIC EVIDENCE ................................................................................ 7

   C. EXTRINSIC EVIDENCE ............................................................................. 10

III. CONSTRUING THE '348 AND '129 PATENTS ............................................ 10

   A. '348 CLAIMS AT ISSUE ........................................................................... 11

   B. '129 CLAIMS AT ISSUE ........................................................................... 12

IV. EXPANSE'S CONSTRUCTION ....................................................................... 14

   A. "COMPUTER IMPLEMENTED METHOD" ('348, CLAIM 1; '129, CLAIM 17) ............... 14

   B. "PROFILE" ('348, CLAIMS 1, 8, 17; '129, CLAIMS 17, 19, 20) ...................... 16

   C. "PROBABILISTIC MEASURE"  ('348, CLAIM 1, '129, CLAIM 20) ................. 17

   D. "SCALAR" ('129 PATENT, 17) ................................................................ 18

V. CONCLUSION .................................................................................................. 19

## TABLE OF AUTHORITIES

### Cases

*Bell & Howell Doc. Mgmt. Prods. Co. v. Altek Sys.,*
  132 F.3d 701 (Fed. Cir. 1997)............................................................ 10

*Bell Communications Research, Inc. v. Vitalink Communications Corp.,*
  55 F.3d 615 (Fed. Cir. 1995)................................................................ 6

*Comark Communications, Inc. v. Harris Corp.,*
  156 F.3d 1182 (Fed. Cir. 1998).............................................................. 9

*Cybor Corp. v. FAS Techs.,*
  138 F.3d 1448 (Fed. Cir. 1998).............................................................. 7

*Eastman Kodak Co. v. Goodyear Tire & Rubber Co.,*
  114 F.3d 1547 (Fed. Cir. 1997).............................................................. 7

*Ekchian v. Home Depot, Inc.,*
  104 F.3d 1299 (Fed. Cir. 1997).............................................................. 9

*Enercon GmbH v. International Trade Commission,*
  151 F.3d 1376 (Fed. Cir. 1998), *cert. denied*, 526 U.S. 1130 (1999)............ 7

*Glaxo, Inc. v. Novopharm, Ltd.,*
  110 F.3d 1562 (Fed. Cir. 1997)............................................................ 10

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.,*
  222 F.3d 951 (Fed. Cir. 2000)................................................................ 7

*IMS Tech., Inc. v. Haas Automation, Inc.,*
  206 F.3d 1422 (Fed. Cir. 2000), *cert. dismissed*, 121 S. Ct. 24, 69 USLW 3175 (Sept.
  11, 2000) .............................................................................................. 9

*Johnson Worldwide Assocs, Inc. v. Zebco Corp.,*
  175 F.3d 985 (Fed. Cir. 1999)....................................................... passim

*Key Pharm. v. Hercon Labs. Corp.,*
  161 F.3d 709 (Fed. Cir. 1998)............................................................ 10

*Mantech Envtl.Corp. v. Hudson Envtl. Servs., Inc.,*
  152 F.3d 1368 (Fed. Cir. 1998)........................................................ 8, 10

*Markman v. Westview Instruments, Inc.,*
  52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) ............ 6, 8, 15

*Northern Telecom Ltd. v. Samsung Elecs. Co.,*
  215 F.3d 1281 (Fed. Cir., 2000)............................................................ 15

*Renishaw P.L.C. v. Marposs Societa per Azioni,*
  158 F.3d 1243, 48 U.S.P.Q.2D (BNA) 1117, 1120 (Fed. Cir. 1998) ............ 15

*Scriptgen Pharm. v. 3-Dimensional Pharm., Inc.,*
  79 F. Supp. 2d 409 (D. Del. 1999)........................................................ 10

*Specialty Composites v. Cabot Corp.*, 845 F.2d 981 (Fed. Cir. 1988) ............ 9

*SRI Int'l v. Matsushita Elec. Corp. of America,*
  775 F.2d 1107 (Fed. Cir. 1985)............................................................... 9

*Thermalloy, Inc. v. Aavid Eng'g, Inc.,*
  121 F.3d 691 (Fed. Cir. 1997)................................................................ 7

*Transmatic, Inc. v. Gulton Indust., Inc.,*
  53 F.3d 1270 (Fed. Cir. 1995)........................................................... 8, 9

*Vitronics Corp. v. Conceptronic, Inc.,*
  90 F.3d 1576 (Fed. Cir. 1996)........................................................ 8, 15

*York Prod, Inc. v. Central Tractor Farm and Family Ctr.*, 99 F.3d 1568 (Fed. Cir. 1986) 7

**Statutes**

35 U.S.C. § 112 .......................................................................................................... 15

35 U.S.C. §101 .......................................................................................................... 15

**Regulations**

Examination Guidelines for Computer-Related Inventions,
    http://www.uspto.gov/web/offices/com/hearings/software/analysis/files/guides.doc .. 16

## I.  INTRODUCTION

The two patents in suit disclose a consumer profiling system and advertisement selection system aimed at matching advertisements with the consumers, most likely to welcome them, or in the alternative, to offer consumers the advertisements or offers they would most desire.

### A. The '348 Patent

It has been long known in advertising and marketing that the more a company knows about its consumers, the better chance it has of meeting those consumers' needs, thereby attracting loyal, satisfied customers. It has also been long known that a person's demographic makeup can influence behavior patterns.  Advertisers and marketers have therefore tried to learn as much as possible about the demographics of their intended market or audience.  But in a time of increased awareness of personal security and privacy, consumers are becoming far less likely to give out such personal information.

With these ideas in mind, Dr. Charles Eldering, the inventor of the '348 and '129 patents (attached hereto as Exhibits A and B respectively), invented a method of inferring probabilistic demographic information about a consumer based on a consumer's purchase behavior.  The '348 patent specifically discloses a profiling system whereby someone can utilize a database that tracks a consumer's purchases and apply rules (gleaned from learning, discovery, experiments or trial and error) which can be associated with specific demographic traits to create a probabilistic profile of that consumer.  An example of a very basic use of the '348 patent would be to infer that a consumer is Hispanic if he purchased a specific selection of products, such as Colgate toothpaste and

Bimbo bread.

        B. The '129 Patent

        The '129 Patent discloses an advertisement selection system that allows an advertiser, with a choice of advertisements, to use discretionary target marketing characteristics to determine the best advertisement "fit" for a consumer.   The method of the '129 is to determine discretionary characteristics of the consumer, thereby creating a consumer profile.  Discretionary ad target marketing characteristics are then determined for each advertisement, thereby creating advertisement profiles.  A calculation is then performed to determine the best "fit" so that a consumer gets an advertisement for a product or service that is somehow relevant to his life and an advertisement is not wasted on an unwilling audience.   Under the '129 patent, for example, seniors would not be sent advertisements for baby formula.

## II.  THE LAW OF CLAIM CONSTRUCTION

        A. Plain And Ordinary Meaning

        As the Court is already aware, determining the proper meaning of patent claims is a question of law, and thus the task of claim construction falls on the Court.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).   To construe claim terms, the Court first looks to the intrinsic evidence, which includes the claim language, the specification, and the file history, and ascribes the plain and ordinary meaning of the terms.  *Johnson Worldwide Assocs, Inc. v. Zebco Corp.*, 175 F.3d 985, 989  (Fed. Cir. 1999); *Bell Communications Research, Inc. v. Vitalink Communications Corp.,* 55 F.3d 615, 620 (Fed. Cir. 1995); *Enercon GmbH v. International Trade Commission*, 151 F.3d 1376, 1384 (Fed. Cir. 1998), *cert. denied*, 526

U.S. 1130 (1999); *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951,

955 (Fed. Cir. 2000).  While none of the intrinsic information should be ignored, the

Federal Circuit has indicated that the claim language itself defines the scope of the claim,

and a construing court should not accord the specification, prosecution history and other

relevant evidence the same weight as the claims themselves.  *Eastman Kodak Co. v.

Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1552 (Fed. Cir. 1997), *overruled on other

grounds by Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998); *see also,

York Prod, Inc. v. Central Tractor Farm and Family Ctr.*, 99 F.3d 1568, 1572 (Fed. Cir.

1986); *Thermalloy, Inc. v. Aavid Eng'g, Inc.,* 121 F.3d 691, 692-93 (Fed. Cir. 1997).  A

court must therefore presume that the terms in the claim mean what they say and, unless

otherwise compelled, give full effect to the ordinary and accustomed meaning of claim

terms.  *Johnson Worldwide*, 175 F.3d at 989.

Sensibly enough, our precedents show that dictionary definitions may establish a

claim term's ordinary meaning. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344

(Fed. Cir. 2001) (using Random House Unabridged Dictionary to define the ordinary

meaning of "portion" as encompassing both a one-piece and a two-piece structure).  The

meaning of a claim term may come from a "relevant dictionary" so long as the definition

does not fly "in the face of the patent disclosure".  *CCS Fitness, Inc. v. Brunswick Corp.*,

288 F.3d 1359, 1366 (Fed. Cir., 2002) (citing *Reinshaw PLC v. Marposs Societa' Per

Azioni,* 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

B. Intrinsic Evidence

As best explained in *Johnson Worldwide*, there are only "two situations where a

sufficient reason exists to require the entry of a definition of a claim term other than its

7

ordinary and accustomed meaning." *Id.* at 990.  One such situation is when the term or terms chosen by the patentee so deprive the claim of clarity that there is no means by which the scope of the claim may be ascertained from the language alone. *Id.*  In other words, if the meaning of a term is not apparent from the claim itself (and therefore has no ordinary meaning) the Court must then look to the specification and prosecution history for a meaning.  *Markman*, 52 F.3d at 979.  The other situation is when the patentee has chosen to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term.  *Johnson Worldwide*, 175 F.3d at 990.  In that situation, it is always necessary to review the specification and prosecution history in order to determine if the inventor used any terms in a manner inconsistent with their ordinary meaning--i.e., whether the intrinsic evidence sets forth an explicit definition. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Transmatic, Inc. v. Gulton Indust., Inc.*, 53 F.3d 1270, 1277 (Fed. Cir. 1995).  If the written description supports the definition of the term that is apparent from the claim language, then reading in a further limiting definition is improper.  *Mantech Envtl.Corp. v. Hudson Envtl. Servs., Inc.*, 152 F.3d 1368, 1374 (Fed. Cir. 1998).  Therefore, if the ordinary meaning of a term is apparent from the claim itself, and neither the specification nor prosecution history contradict that meaning with an explicit definition, the ordinary meaning of the term applies.

        As mentioned above, the specification and the prosecution history should be consulted to provide clarity if the meaning of the term is not apparent from the language itself and to determine if the inventor set forth an explicit definition for the disputed term. *Johnson Worldwide*, 175 F.3d at 989-90.  *See also*, *Markman*, 52 F.3d at 979; *Vitronics*

*Corp.*, 90 F.3d at 1582; *Transmatic*, 53 F.3d at 1277.  However, that consultation must be balanced with the principle that it is impermissible to read a particular embodiment into the claim.  *Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1186-87 (Fed. Cir. 1998); *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1433 (Fed. Cir. 2000), *cert. dismissed*, 121 S. Ct. 24, 69 USLW 3175 (Sept. 11, 2000).  In other words, while claims should be read in view of the specification, it is improper to limit the scope of a claim to the preferred embodiment or specific examples disclosed in the specification. *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1303 (Fed. Cir. 1997).

The reason for this prohibition is to preserve the function of the claims in a patent. If every claim were limited to the preferred embodiment, there would be no need for several claims.  *See SRI Int'l v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1121 (Fed. Cir. 1985).  The Federal Circuit has therefore consistently found that a patent is not restricted to the examples, but is defined by the words in the claims.  For example, in *Specialty Composites v. Cabot Corp.*, the Federal Circuit found that just because the three examples described in the specification all referred to external plasticizers, the term "plasticizers" should not be limited to external plasticizers because the specification did not require that limitation and thus it should not be read into the claims.  *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987 (Fed. Cir. 1988).  Likewise, in *SRI Int'l*, the Court held that merely because "a specification describes only one embodiment does not require that each claim be limited to that one embodiment." *SRI Int'l*, 775 F.2d at n.14.  Therefore, as a general rule, modifiers should not be added to broad terms standing alone and mere inferences drawn from a description of an embodiment (or example) of the invention cannot require a narrower definition of a claim term.  *Johnson Worldwide*,

175 F.3d at 989, 991.

C. Extrinsic Evidence

As part of the claim construction process, the Court may sometimes consult extrinsic evidence. Such evidence is not typically needed or used to construe the claims because, in most cases, the intrinsic evidence (i.e., the claims, specification and prosecution history) should be sufficient to determine the meaning of a claim term.[1] *Bell & Howell Doc. Mgmt. Prods. Co. v. Altek Sys.,* 132 F.3d 701, 705 (Fed. Cir. 1997). In fact, when the meaning of a disputed claim term is clear from the intrinsic evidence--i.e., the intrinsic evidence is unambiguous--that meaning and no other must prevail; it is improper for the court to rely on extrinsic evidence (e.g., expert witness testimony or other external sources) to alter or supersede that meaning. *Bell & Howell*, 132 F.3d at 706; *Scriptgen Pharm. v. 3-Dimensional Pharm., Inc.*, 79 F. Supp. 2d 409, 411 (D. Del. 1999) (quoting *Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998)).

## III. CONSTRUING THE '348 AND '129 PATENTS

As a general comment, Catalina has taken an approach to claim construction which is unfortunately becoming the norm. Catalina has attempted to insulate its accused products by contesting the meaning of nearly every term in the claims, hoping that the Court will side with them on just one of their strained definitions, thus preventing a finding of literal infringement. (See Catalina's Disputed Claim Terms, attached hereto as

---

[1] If extrinsic evidence is used, in most cases it is only to provide background to aid the Court's understanding of the patent. See *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1565 (Fed. Cir. 1997. And while extrinsic evidence (e.g., expert testimony) may be admitted by the trial court to educate itself about the patent and the relevant technology, the claims and the written description remain the primary and more authoritative sources of claim construction. *Mantech,* 152 F.3d at 1373; *Bell & Howell*, 132 F.3d at 705; *Glaxo*, 110 F.3d at 1565.

Exhibit C). With little regard for the ordinary meaning of common terms and the simplicity of the claim language, the Defendant poses definitions which unnecessarily complicate the plain claim language and senselessly limit the scope of the claim.  In some instances, the Defendant's definitions do nothing more than summarize the actual claim. The complexity of the definitions proposed by Catalina, along with the sheer volume of contested terms, raises a question as to the persuasiveness of Catalina's claim construction positions.

As per the Court's instructions in an April 2004 telephone conference call, Catalina submitted claim terms that it wished for Expanse to define (see letters to Plaintiff regarding claims that need definitions, attached hereto as Exhibit D). Catalina requested proposed definitions for nearly three dozen terms.  Expanse, on the other hand, believes only a handful of terms truly need the attention of this Court because the majority of terms in the six claims at issue are easy to understand and should be given their plain and ordinary meaning. *Johnson Worldwide*, 175 F.3d at 989.

A. '348 Claims At Issue

Claim 1, an independent claim, recites the following, with terms Expanse anticipates Catalina will dispute are in boldface type:

| Preamble | A **computer implemented method** for generating a **profile** of **a** consumer based on multiple purchases made by the consumer that are **accumulated in detailed purchase records** of the consumer, the method comprising: |
|---|---|
| Element 1 | retrieving the detailed purchase records; |
| Element 2 | retrieving product characterization information associated with products included in the detailed purchase records, where in the product characterization information includes |

a **set** of **heuristic rules** defining a **probabilistic measure** of **demographics** of a purchaser of a product; and

Element 3            **generating a profile of the consumer based on the detailed purchase records and the product characterization information,** wherein the **profile** of the consumer includes a **demographic profile** of the consumer generated from the **detailed purchase records** and the **set of heuristic rules.**

Claim 8, which depends from Claim 1, recites the following:

The method of claim 1, wherein said **generating a profile of the consumer includes generating a product preference profile of the consumer based on the detailed purchase records**.

Claim 17, an independent claim, recites the following:

Preamble            A **computer implemented method** for generating a profile of a consumer based on **transactions** performed by the consumer at multiple locations, the transactions being recorded and **accumulated in detailed transaction records** for the consumer, the method comprising:

Element 1            retrieving the detailed transaction records, **wherein the detailed transaction records include an inventory of the recorded transactions of the consumer**; and

Element 2            **generating a profile of the consumer based on the detailed transaction records and a set of heuristic rules associated with transactions within the detailed transaction records**, the **set of heuristic rules** defining a **probabilistic measure of demographic characteristics** of a person performing the transactions.

B. '129 Claims at Issue

Expanse asserts that Catalina infringes claims 17, 19 and 20 of the '129 patent, the text of which are set forth below.

Claim 17, an independent claim, recites the following, with terms Expanse anticipates Catalina will dispute in boldface type:

| | |
|---|---|
| Preamble | A **computer implemented method** for selecting a targeted **advertisement** for a consumer by comparing a **profile** of the consumer which is generated from **multiple transactions** of the consumer to a profile of each of a plurality of **advertisements**, wherein each **advertisement profile** identifies discretionary **characteristics** of an intended target market of the advertisement, the method comprising: |
| Element 1 | **receiving the advertisement profile for the advertisement**; |
| Element 2 | retrieving the **consumer profile**, wherein the multiple transactions used to generate the consumer profile include purchases of the consumer from multiple points-of-sale; |
| Element 3 | calculating a **correlation factor** between the advertisement profile and the consumer profile as a **scalar product** of the consumer profile and the advertisement profile; and |
| Element 4 | selecting the targeted **advertisement** to present to the consumer responsive to said calculating a correlation factor. |

Claims 19 and 20 (which both depend from claim 17) recite the following:

Claim 19:

| | |
|---|---|
| Preamble | The method of claim 17, wherein said retrieving the consumer **profile** includes |
| Element 1 | **retrieving a detailed transaction record, wherein the detailed transaction record includes an inventory of each of the multiple transactions which occurred over a predetermined time interval; and** |
| Element 2 | **generating the consumer profile from the detailed transaction record**. |

Claim 20:

The method of claim 19, wherein said retrieving the consumer profile further includes retrieving a **set** of heuristic rules association with transactions within the detailed transaction records, the set of heuristic rules defining a probabilistic measure of demographic characteristics of a person performing the transactions, and said generating the consumer

13

profile includes generating the consumer profile based on the detailed transaction record and the set of heuristic rules.

## IV. EXPANSE'S CONSTRUCTION

As stated above, Expanse believes that only a few terms need the attention of the Court and that Expanse's definitions are supported by the plain and ordinary wording of the claims, the specification and the file history. Expanse also believes these meanings place all language in the claim in the appropriate context.

| | |
|---|---|
| *Computer implemented method* | procedure or process performed by a computer |
| *Profile* | description of one or more significant features or characteristics |
| *Probabilistic Measure* | a quantity which is not certain, but which has a known or unknown probability associated with it. |
| *Scalar* | a number, numerical quantity, or element in a field |

The support for these constructions, as will be described below, is based on the ordinary language of the claim, the specification of the both the '129 and '348 patents, and the prosecution history of the '129 and '348 patents. Expanse submits that, based upon the information provided to Expanse during discovery, Catalina's proposed construction of these words/phrases is strained, does not place all the claim language in context, and is designed to narrow the scope of the claim to avoid infringement.

### A. "Computer Implemented Method" ('348, Claim 1; '129, Claim 17)

Although Expanse believes that the term "computer implemented method" is understood without further definition, Catalina has disputed this term. Specifically,

Catalina has added in the limitation that "each step" in the claimed method is performed by a computer. The Federal Court has consistently held that a party can not add limiting language that is not supported in the intrinsic evidence. "This court has repeatedly and clearly held that it will not read unstated limitations into claim language." *Northern Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1291 (Fed. Cir., 2000) (citing *Renishaw P.L.C. v. Marposs Societa per Azioni*, 158 F.3d 1243, 1248, 48 U.S.P.Q.2D (BNA) 1117, 1120 (Fed. Cir. 1998); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 U.S.P.Q.2D (BNA) 1573, 1576 (Fed. Cir. 1996); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-90, 34 U.S.P.Q.2D (BNA) 1321, 1329-30 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. [*1291] 370, 38 U.S.P.Q.2D (BNA) 1461, 134 L. Ed. 2d 577, 116 S. Ct. 1384 (1996)).

Nowhere in either the specification (which is the same in both the '348 and '129 patents) or the file history is support for the notion that *each step* in the claimed method must be performed on a computer.  The words "computer-implemented method" were added to the patent after the examiner rejected claims 16-47 under 35 U.S.C. §101 and 35 U.S.C. § 112 because the claimed invention was not supported by a computer or machine. (See Bates No. CAT 000959-960, attached hereto as Exhibit E).  The '348 prosecution history clearly states that the claims were amended to identify that the method and system are computer implemented. (See Bates No. CAT 000982, attached hereto as Exhibit F). There is no limitation that "implemented" means that *each* step must be performed on the computer as Catalina asserts.

In fact, USPTO guidelines demonstrate that computer related inventions are not so limited.

Many computer related inventions do not consist solely of a computer. Thus, Office personnel should identify those claimed elements of the computer-related invention that are not part of the programmed computer, and determine how those elements relate to the programmed computer. Office personnel should look for specific information that explains the role of the programmed computer in the overall process or machine and how the programmed computer is to be integrated with the other elements of the apparatus or used in the process.

(Examination Guidelines for Computer-Related Inventions, http://www.uspto.gov/web/offices/com/hearings/software/analysis/files/ guides.doc).

Expanse believes the phrase "computer implemented method" is simple and straightforward and needs no definition. In the alternative, Expanse asks the Court to adopt the definition "a procedure or process performed on a computer."

B. "Profile" ('348, claims 1, 8, 17; '129, claims 17, 19, 20)

Again, Catalina has added limiting language that does not appear in the claim or have support from intrinsic evidence. Catalina has defined profile as "a formal summary or analysis of data, often in the form of a graph or table, representing distinctive features or characteristics." Catalina then adds the limitation that "to be a profile, at least two characteristics must be included." The first part of that definition appears to have come from *The American Heritage® Dictionary of the English Language, Fourth Edition.*

Expanse, however, can find no support for the contention that a profile must have at least two characteristics. In fact, the intrinsic evidence would prove otherwise. Profile

is used in these two patents in two different, but consistent manners, one identifying a "consumer profile", the other an "advertisement profile."  In the specification, one embodiment has the profile drawn as a vector (see Figure 10 of Exhibit A). The specification clearly lays out a scenario where a single issue vector – such as age – forms the consumer "profile":

> In the alternate embodiment, a group of demographic or product characteristics forms an individual vector. As an example, age categories can be considered a vector, with each component of the vector representing the probability that the consumer is in that age group. In this embodiment, each vector can be considered to be the basis vector for the description of the consumer or target ad.
>
> (See Exhibit A, Col. 8, Lns. 56-62).

While it is possible for a profile to contain numerous demographics (Figure 10 describes an ad profile vector with fields representing family size, age and income), there is no support in the specification or file wrapper to read the limitation of two or more characteristics into the claim language.  Again, this is an instance where Catalina is attempted to add limitations that narrow the claim language in order to avoid infringement.

C. "Probabilistic Measure"  ('348, claim 1, '129, claim 20)

Expanse has provided a definition of "probabilistic measure" that is both consistent with the term's ordinary meaning and consistent with the use of the term in the patent specification. Expanse defines probabilistic measure as a quantity which is uncertain, but

which has a known or unknown probability associated with it. Catalina, on the other hand, defines probabilistic measure as a *number* representing a fractional probability. Catalina's definition has the limitation that it must be a number, which is not supported by either the specification or the file wrapper. While deterministic data, that data to which a definite value can be assigned, can be a part of a consumer's profile, the '348 patent would be unnecessary to a company that already had a wealth of deterministic data on its consumers. Obviously deterministic data, be it obtained directly from the consumer or from some reliable third-party that collects such information, would be far more predictable than probabilistic data. And while probabilistic data could be expressed as a number, or a range of numbers, such as a scale or graph, there are significant ways to express probability that do not include numbers. One example is a scale of high, medium and low. For example, if a study was conducted that concluded that Colgate is the most-commonly purchased toothpaste by Hispanics in California, a transaction record that included Colgate toothpaste may lead to the inference that the purchaser is Hispanic. The probabilistic measure that the consumer is Hispanic would likely be low. If, on the other hand, the consumer bought several products that the study had determined to be Hispanic favorites, as well as the Colgate toothpaste, the probabilistic measure that the customer was Hispanic might be high.

Again, the Court should not allow Catalina to read an unsupported limitation into the claim as an attempt to avoid infringement.

D. "Scalar" ('129 patent, 17)

Expanse has provided a definition of "scalar" that is both consistent with the term's ordinary meaning and consistent with the use of the term in the patent

18

specification. A scalar can be a "number, numerical quantity, or element in a field." The American Heritage Dictionary of the English Language, 4th Ed. (Houghton Mifflin Co. 2000). Catalina has no basis to support a more narrow definition. This ordinary meaning of the term, evidenced by a common dictionary definition, is consistent with the use of the term in the patent's claims and specification.

Catalina's suggested definition says that "scalar product means to multiply the numerical representation of each of the discretionary characteristics in the consumer profile with the corresponding numerical representation of the same discretionary characteristics in a specific advertisement profile and summing the resulting products. In order to determine the scalar product of a consumer profile and an advertisement profile, they must have identical discretionary characteristics." This additional limitation of identical discretionary characteristics is both unnecessary and unsupported. The terms "scalar" and "scalar product" are consistently used in the specification simply as means of calculating a correlation between profiles ('348 patent, Col. 11, lines 28-30). Thus, Catalina's overly restrictive definition should be rejected.


## V. CONCLUSION

Despite having only six claims at issue in this case, Catalina is asking the Court to construe about a dozen terms. The Defendant is picking apart the claims word by word in an attempt to cloud the issue and possibly get overly restrictive definitions in order to narrow the claims and avoid infringement. Expanse, on the other hand, stands behind the black letter law of claim construction that words should be given their plain and ordinary meaning and that the claim language itself should determine the scope of the claims. In

many of its proposed claim definitions, Catalina has ignored well-established principles of claim construction and interposed limitations on claim terms where those limitations are not supported by the patents' claims, specifications, or file histories.  Most of the claims at issue are straight-forward and not overly technical and should not require definitions other than the ordinary meaning attached to them. To the extent that the Court believes a term should be defined, it should adopt definitions that do not read unsupported limitations into the claims.

Respectfully submitted,

Dated: June 25, 2004                    _____

Steven M. Coren
Kaufman, Coren & Ress, P.C.
1525 Locust Street, 17th Floor
Philadelphia, PA 19102
Telephone: (215) 735-8700
Facsimile:  (215) 735-5170

ATTORNEYS FOR PLAINTIFF

Of counsel:

Edward W. Goldstein
Jody M. Goldstein
GOLDSTEIN & FAUCETT, LLP
1177 West Loop South, Suite 400
Houston, TX 77027
Telephone: (713) 877-1515
Facsimile: (713) 877-1737