## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EXPANSE NETWORKS, INC.      §
                             §

     PLAINTIFF,                §
                             §

vs.                                   §           **C.A. NO. 02-CV-2857**
                             §

CATALINA MARKETING CORP.,      §
                             §

     DEFENDANT.            §

## DEFENDANT'S BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT OF
## NON - INFRINGEMENT

Dated: June 25, 2004

Eric Kraeutler (Pa. Bar No. 32189)
John V. Gorman (Pa. Bar No. 80631)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone No.: (215) 963-5000
Facsimile No.: (215) 963-5001

John W. MacPete
Paul V. Storm
STORM & HEMINGWAY, L.L.P.
8117 Preston Road, Suite 460
Dallas, TX 75225
Telephone No.: (214) 292-8300
Facsimile No.: (214) 292-8999

**ATTORNEYS FOR DEFENDANT
CATALINA MARKETING CORP.**

**TABLE OF CONTENTS**

Page

I.    FACTUAL BACKGROUND ........................................................................................1

    A.    EXPANSE NETWORKS AND THE PATENTS-IN-SUIT.................................................1

    B.    CATALINA AND THE SERVICES AT ISSUE .........................................................2

II.   APPLICABLE LAW. ...............................................................................................4

III.  ARGUMENT..........................................................................................................8

    A.    CATALINA DOES NOT INFRINGE THE '348 PATENT ...........................................8

    B.    CATALINA DOES NOT INFRINGE THE '129 PATENT .........................................10

IV.   NON-INFRINGEMENT UNDER § 273 .........................................................................12

This is Defendant Catalina Marketing, Inc.'s ("Catalina") brief in support of Catalina's Motion for Summary Judgment that none of Catalina's products infringe Expanse Networks, Inc.'s ("Expanse") patents-in-suit. Expanse brought this suit against Catalina in 2002 alleging infringement of its U.S. Patent Nos. 6,298,348 ("'348 patent") and 6,216,129 ("'129 patent") (collectively, the "patents in suit"). Specifically, Expanse asserts that Catalina's Checkout Direct products, in some instances, infringe claims 1, 8 and 17 of the '348 patent, and claims 17, 19 and 20 of the '149 patent. Catalina is entitled to summary judgment of non-infringement of the '348 patent because, inter alia, it does not generate consumer profiles and does not have or use heuristic rules defining a probabilistic measure of demographic characteristics. Catalina is entitled to summary judgment of non-infringement of the '129 patent because it does not use consumer profiles, does not use advertisement profiles, does not use scalar products, and does not use correlation factors to select an advertisement. Expanse has no competent evidence of infringement and Catalina is entitled to judgment of non-infringement as a matter of law.

## I.    FACTUAL BACKGROUND

### A.    EXPANSE NETWORKS AND THE PATENTS-IN-SUIT

Expanse was formed in 1998 by Dr. Charles Eldering to develop technology for the interactive television market. See Declaration of John V. Gorman ("Gorman Declaration"), filed concurrently herewith, at Exhibit 12, Eldering Deposition Trans. at pp. 9:1-7, 14:7-20. One of the problems considered by Expanse was the difficulty in selecting which programs should be delivered to which subscribers. See Exhibit 18 to Exhibits to Defendant's Markman Brief Regarding Claim Construction Of The '129 and '248 Patents ("Markman Exhibit") filed concurrently herewith at '010 patent col 1, ll 37-50. To address this problem Expanse developed technology to track subscribers viewing habits and develop a profile of a subscriber based on

their viewing selections.

Later, Expanse filed a patent application applying the subscriber profiling technology to the generation of demographic profiles of consumers generally. This application would eventually issue as the '348 patent. Expanse also filed an application for the use of consumer profiles to target advertisements. This application would eventually issue as U.S. Patent '129 patent. Although Expanse originally tried to get broad patent protection, the patent office identified significant prior art that showed that Expanse was not the first to demographically profile consumers or use consumer profiles to target advertisements. See Markman Exhibit 15, prosecution history of '348 patent, pp CAT 0961 and Markman Exhibit 2, prosecution history of '129 patent, pp CAT 1212. In response to rejections by the patent office to get the '348 patent, Expanse added the requirement that the consumer profile be created using a set of heuristic rules defining a probabilistic measure of demographic characteristics. Markman Exhibit 16, pp. CAT 0982-0983, 0972. To get the '129 issued, Catalina added that the consumer profile and at least two advertisement profiles must be correlated using a scalar product. Markman Exhibit 2, pp. CAT 1224, 1251-1252.

The '348 and '129 patents both issued in 2001. The '348 patent covers a method of generating a consumer profile by using purchase records and heuristic rules defining a probabilistic measure of demographic characteristics. The '129 patent covers a method of selecting an advertisement by mathematically comparing a consumer profile with at least two advertisement profiles.

### B. CATALINA AND THE SERVICES AT ISSUE

Catalina provides behavior-based targeted marketing services. Declaration of Jack Hickman ("Hickman Declaration"), filed concurrently herewith, ¶ 4. Catalina believes that a

person's actual prior consumer purchase behavior is a better indicator of future purchase activities than the person's demographics. *Id.*, ¶ 9. For instance, a person who has a baby in the house may be more likely than the average person to purchase diapers. *Id.* However, some people, who do not have a baby, may purchase diapers for family members or for charity. One the other hand, people who regularly purchase diapers or a closely related product, such as baby food, are likely to purchase diapers in the future, whether they have a baby themselves or not. Therefore, a manufacturer attempting to sell more diapers is better off marketing to people who regularly purchase diapers or baby food than only to people who have babies. Catalina coined the term "BUY-O-Graphics®" to refer to this marketing strategy. Gorman Exhibit 11, pp. 76.

Catalina maintains the largest database in the United States of consumer purchase information from grocery store purchases. Hickman Declaration, ¶ 5. Typically, Catalina collects and processes over 200 million transactions per week. *See* Hickman Declaration, ¶5. Catalina Marketing uses this information to deliver targeted coupons and direct mail campaigns.

In addition to marketing based on purchase history, some of Catalina's programs direct promotions to consumers based on a consumer's current purchases and based on demographic information provided by the consumer or purchased from third-party providers such as Experian, InfoUSA, HomeData, and Direct List Technologies. Using these targeting approaches, Catalina assists manufacturers and retailers reach potential customers through a variety of programs.

Catalina Marketing provides two basic services to its customers, known respectively as Checkout Coupon and Checkout Direct. Hickman Declaration, ¶ 4. Checkout Coupon provides for delivery of promotions (generally coupons) based upon a real-time analysis of the items being purchased by a consumer during a shopping trip. Hickman Declaration, ¶ 9. For instance, a Checkout Coupon program for Oscar Meyer might provide that a coupon for .25¢ off a

package of Oscar Meyer hot dogs is to be delivered when hot dog buns and mustard are scanned during a shopping trip. Checkout Direct provides for delivery of promotions (generally coupons) based upon an analysis of the historical purchases of a consumer stored in Catalina's CDMS database. Hickman Declaration, ¶ 12. For instance, a Checkout Direct program for Oscar Meyer might provide that a coupon for a free package of Oscar Meyer hot dogs is to be delivered to particular loyalty cardholders identified (by an analysis of their purchase history in the CDMS database) as being loyal, high volume purchasers of Ball Park Franks. *Id.* Catalina has had a number of branded products that are based upon Checkout Direct which vary only in the delivery method (e.g. at the checkout or by direct mail) and type of promotions being delivered (e.g. coupon or product sample), which include:  Sample Logic, Targeted Direct Mail, Catalina Category Marketing, In-Store Prints, One-to-One Direct and Retail Direct On-Line (collectively

## II.  APPLICABLE LAW

The purpose of summary judgment is "avoid an unnecessary trial when only one outcome can ensue." *See Vivid Tech., Inc. v. American Science & Eng'g, Inc.,* 200 F.3d 795, 806 (Fed. Cir. 1999). On a motion for summary judgment of non-infringement, the movant need only provide evidence that negates an essential element of the non-movant's infringement case or establish that there are no material issues of fact and that the non-movant will not be able to prove an essential element of its infringement case at trial. *See Vivid Tech., Inc. v. American Science & Eng'g, Inc.,* 200 F.3d 795, 807 (Fed. Cir. 1999). There can be no genuine issue of material fact, if after adequate time for discovery the nonmoving party fails to establish the existence of an element essential to the nonmoving party's case, and on which that party will bear the burden of proof at trial, because such failure renders all other facts immaterial. *See Johnston v. IVAC Corp.,* 885 F.2d 1574, 1577 (Fed.Cir. 1989).

The party claiming infringement, in this case has the burden of proving infringement by a preponderance of the evidence. *See Carroll Touch, Inc. v. Electro Mech., Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993). A determination of patent infringement for a utility patent involves a two-step analysis: 1) first, the asserted claims must be properly construed to determine their scope and meaning and 2) second, the asserted claims as properly construed must be compared to the accused device or process. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003), *citing Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993).[1] For there to be literal infringement, every claim element of at least one valid claim must be present in the accused Catalina products. *See Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1349 (Fed. Cir. 1998) ("An accused device cannot infringe, as a matter of law, if even a single limitation is not satisfied."), *citing, Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 935 (Fed. Cir. 1987). For there to be infringement under the doctrine of equivalents, the differences between the accused product or method and the claim elements that are literally missing must be shown by Expanse to be insubstantial. *See Sage Prod., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997).

Notwithstanding Expanse's lack of evidence to support its burden of proving infringement, Defendant is entitled to summary judgment that Catalina does not literally infringe the '129 or the '348 patents because there are no genuine issues of material fact related to infringement. Again, a determination of patent infringement for a utility patent, such as the '129 and the '348 patents, involves a two-step analysis: 1) first, the asserted claims must be properly construed to determine their scope and meaning and 2) second, the asserted claims as properly

---

[1] For purposes of this motion, Catalina relies on the claim construction set forth in its Markman brief filed contemporaneously herewith.

construed must be compared to the accused device or process. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003), *citing Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993). For there to be literal infringement, every claim element of at least one valid claim must be present in the accused Catalina products, as shown below. *See Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1349 (Fed. Cir. 1998) ("An accused device cannot infringe, as a matter of law, if even a single limitation is not satisfied."), *citing, Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 935 (Fed. Cir. 1987). Claim construction is a question of law, while infringement is a question of fact. *See Cybor Cor. V. FAS Tech., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998); *Insituform Tech., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 692 (Fed. Cir. 1998). Mere disagreement between the patentee and accused infringer over the meaning of claim terms does not preclude summary judgment. *See Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 546 (Fed. Cir. 1994). Summary Judgment under Fed. R. Civ. P. 56 is appropriate in patent cases when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed.Cir. 1989). Where no underlying fact issues exist, claim interpretation is a question of law. *See Johnston v. IVAC Corp.*, 885 F.2d 1574, 1579 (Fed.Cir. 1989). Therefore, a mere disagreement over the meaning of claim terms between the patentee and the accused infringer does not create an issue of fact. *Id.*

Application of the doctrine of equivalants may be limited by prosecution history estoppel, which precludes a patentee from obtaining a claim construction that would resurrect subject matter surrendered during prosecution of the patent application. *See Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1376-77 (Fed. Cir. 1999). Before the doctrine of equivalents is applied to any claim element that is not present literally, the prosecution history

must be examined to determine if that particular claim element is entitled to any equivalent scope or if the patentee is estopped from claiming equivalents. *See Festo Corp. v. S.K.K. Co.*, 234 F.3d 558, 564-65 (Fed. Cir. 2000), *cert. granted*, 121 S. Ct. 2519, 150 L. Ed.2d 692 (2001). A prosecution history containing an amendment of claims to avoid prior art prevents recapture of subject matter the applicant surrendered to obtain patent protection. *See Litton Sys. v. Honeywell, Inc.*, 140 F.3d 1449, 1456 (Fed. Cir. 1998). Additionally, if the claim element is amended during prosecution and the patentee provided no reasoning for the amendment at the time it was made, then, it is presumed that the amendment was for purposes of patentability and that element is presumptively not entitled to any equivalent scope. *See Warner-Jenkinson Co. v. Hilton Davis Chem.Co.*, 520 U.S. 17, 40 (1997). Thus, if a claim element is narrowed by amendment during prosecution for any purpose related to patentability, then that claim element is not entitled to any equivalent scope. *See Festo Corp. v. S.K.K. Co.*, 234 F.3d 558, 563-64 (Fed. Cir. 2000), *cert. granted*, 121 S. Ct. 2519, 150 L. Ed.2d 692 (2001). If under the particular facts of a case prosecution history estoppel applies, summary judgment should be rendered by the court, as there would be no further material issue for a jury to resolve. *See Warner-Jenkinson.*, 520 U.S. at 39.

To avoid summary judgment of non-infringement, Expanse is required to proffer evidence that the Catalina products contain every element of the asserted claims of the '129 or the '348 patent, either literally or by equivalents. *See Bravo Sys. v. Containment Techs. Corp.*, 96 F.3d 1372, 1376 (Fed. Cir. 1996). "Summary judgment of noninfringement is appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, since such failure will render all other facts immaterial." Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1323 (Fed. Cir. 2001).

## II.  ARGUMENT

Catalina does not use heuristic rules defining a probabilistic measure of demographic characteristic and does not use a scalar product for any purpose.  Nevertheless, Expanse has alleged that Catalina branded products that are based upon the Checkout Direct concept, in some limited instances, infringe the patents-in-suit.  Expanse asserts that when the "purpose" of a Checkout Direct search of the CDMS database is to identify loyalty cardholders as meeting a certain demographic characteristic such as "households with babies," then that use of Checkout Direct infringes.  Expanse concedes that when the "purpose of a Checkout Direct search of the CDMS database is to identify loyalty cardholders that purchase certain types of products such as "carbonated soft drinks" or "low-cal lifestyle," then that use of Checkout Direct does not infringe.  In fact, a comparison of the Checkout Direct Products to the properly-construed claims at issue clearly demonstrates that no infringement, either literally or by equivalents, has occurred.

### A.  CATALINA DOES NOT INFRINGE THE '348 PATENT

None of Catalina's Checkout Direct Products infringe the '348 patent.  Claims 1, 8, and 17 of the '348 patent all require that the consumer profile be generated by the computer program of the '348 patent utilizing historical product purchase information and applying stored sets of heuristic rules defining the probabilistic measure of at least two demographic characteristics (e.g. 80% chance of being Hispanic, 30% chance of being female).  None of Catalina's Checkout Direct Products generate profiles for individual loyalty cardholders.  The output from a Checkout Direct search of the CDMS database is an electronic file containing a chain ID, store ID, an MCLU (numeric link to an image file of the promotion to be delivered), a coupon count, and a loyalty card numbers, and nothing else is in the file.  Hickman Declaration, ¶ 26.  That file is not a profile of a consumer.  That file does not identify any demographic characteristics of the

consumer.

Additionally, assuming arguendo, that such a file was a "consumer profile," it is not generated by the method disclosed in the '348. The method disclosed requires that the computer retrieve from memory the detailed purchase records; retrieve from memory product characterization information including heuristic rules defining a probabilistic measure of demographic characteristics; and apply those heuristic rules to the historical purchase records to generate a consumer profile with at least two demographic characteristics. Catalina's CDMS database contains detailed historical purchase records which are retrieved from memory during a Checkout Direct search and compared against a query composed of a list of UPCs selected by the user, not the computer. Hickman Declaration, ¶ 22. Catalina also maintains a separate database that contains product characterization information relating UPC numbers to particular products and packaging. Hickman Declaration, ¶ 19, 20. However, that product characterization information does not contain heuristic rules or any probabilistic measure of demographic characteristics. *Id.* Further, the UPC database is not retrieved or accessed in any way during a Checkout Direct search. A Checkout Direct search consists of user entering a query composed of a list of user-selected UPCs into the computer; the computer retrieving the CDMS database; the computer comparing the query to the records in the CDMS database to determine the number of loyalty card numbers that satisfy the query; and generating an electronic file with an MCLU and loyalty card numbers that were identified as satisfying the query as described above. Hickman Declaration, ¶ 22, 26. Because a Checkout Direct search does not perform the second step of the claimed method "retrieving the product characterization information...," no infringement occurs.

Additionally, a Checkout Direct search does not utilize the claimed method because it

does not access or apply stored heuristic rules; does not access or apply a set of rules identifying at least two demographic characteristics; and does not access or apply a set of rules defining a probabilistic measure of demographic characteristics (e.g. 80% chance of being Hispanic and 20% chance of being female).  Markman Exhibit 25, Expert Report of Williams, ¶ V.C.1. Catalina does not store any rules for predicting demographic characteristics of particular loyalty cardholders.  *Id.*  Catalina does not store any rules defining a numeric probability that individual loyalty cardholders have certain characteristics, demographic or otherwise.  *Id.*

Expanse was required to add that the method of the '348 patent includes "a set of heuristic rules defining a probabilistic measure of demographic characteristics" to get the '348 patent granted.  Markman Exhibit 15, pp. CAT 000973 & 000982.  Therefore, Expanse is not entitled to the doctrine of equivalents for that element.  Accordingly, Catalina is entitled to summary judgment that its accused infringing products do not infringe the '348 patent under the doctrine of equivalents.

Because the output from a Checkout Direct search is not a profile of a particular consumer and because that output is not generated utilizing the method disclosed in the '348 patent, the Checkout Direct Products do not infringe.

## B. CATALINA DOES NOT INFRINGE THE '129 PATENT

Claims 17, 19 and 20 of the '129 patent each require retrieval of a stored consumer profile that includes at least two characteristics; comparison of the stored consumer profile to at least two advertisement profiles; calculation of a scalar product of the consumer profile and the first advertisement profile; calculation of a scalar product of the consumer profile and the second advertisement profile; and selection of the advertisement most similar to the consumer profile to be delivered to the consumer based upon comparison of the respective scalar products.  None of

Catalina's Checkout Direct Products utilize the method disclosed in the '129 patent to deliver promotions.

Catalina does not store any profiles of individual loyalty cardholders for use in Checkout Direct and does not store any non-determinative (purchased or self-reported) information about loyalty cardholders' demographics.  Markman Exhibit 25, Expert Report of Williams, ¶ V.A.1. Thus, it is not possible for Catalina to perform the first step of the disclosed method, retrieving a stored consumer profile.  None of Catalina's Checkout Direct Products involve the use of a consumer profile with at least two predicted demographic characteristics.  *Id.*  None of Catalina's Checkout Direct Products involve the comparison of a consumer profile to multiple promotion profiles in order to determine which promotion to deliver to a particular loyalty cardholder.  *Id.* In fact, Catalina does not compare promotions against each other.  *Id.*  Under all of Catalina's products, a particular consumer either qualifies to receive a promotion or they do not − it is a true/false proposition.  In contrast to the method disclosed in the '129 patent which delivers the single advertisement closest to the stored consumer profile, a loyalty cardholder will receive as many Catalina-run promotions as they qualify for without any comparison of those various promotions.

Moreover, none of Catalina's Checkout Direct Products mathematically calculates a correlation factor between a stored consumer profile and an advertisement profile as a scalar product of those profiles. Markman Exhibit 25, Expert Report of Williams, ¶ V.A.1.  The determination of whether a particular loyalty cardholder is to receive a particular promotion is based entirely upon whether they meet the criteria established in the query to the CDMS database and does not involve any mathematical calculations, let alone calculation of a scalar product.

The term "scalar product" was added to all of the claims during prosecution to get around similar systems in the prior art.  Markman Exhibit 2, at CAT 001223.  Additionally, the Examiner's Notice of Allowability indicated that the claims were being allowed because the prior art did not show the limitation of calculating a correlation factor as a scalar product.  *See* Markman Exhibit 2, at CAT 001254.  Therefore, Expanse is not entitled to any range of equivalents on this limitation, and a system which does not calculate scalar products of vectors cannot infringe the '129 patent.

Because Catalina's Checkout Direct Products do not store a profile of individual loyalty cardholders and because they do not compare promotions to determine which promotion to deliver to a consumer, they clearly do not utilize the method claimed in the '129 patent.

## IV.  NON-INFRINGEMENT UNDER § 273

The Patent Act provides a defense to a claim of infringement if the accused infringer, acting in good faith, actually reduce the accused method to practice at least one year before the effective filing date of the patent-at-issue and commercially used the method before the effective filing date.  See 35 U.S.C. §273.[2]  The '129 and '348 patents were filed on March 12, 1999 and claim priority as continuations-in-part to an application filed on December 3, 1998.  For purposes of this motion for summary judgment, the effective filing date of the '129 and '348 patents is December 3, 1998.[3]  Therefore, to qualify for the § 273 defense, Catalina must have reduced the accused services to practice on or before December 2, 1997 and have commercially used the accused services on or before December 2, 1998.

---

[2]    The commercial use of an accused method does not have to be a public use to qualify for the §273 defense. See 35 U.S.C. §273 (a)(1)

[3]    Catalina does not challenge Expanse's claim of priority to the December 3, 1998 application for purposes of summary judgment only.  At trial, Catalina expects to show that Expanse is not entitled to claim priority to the December 3, 1998 application.

Catalina's Checkout Direct and One-to-One Direct programs were in use (and therefore reduced to practice) at least as early as November 11, 1997. Catalina announced its Checkout Direct program in 1992 and began using it commercially in 1994. *See* Hickman Declaration, ¶30. A Checkout Direct matrix used to target consumers identified as households with children based on the products purchased by the consumers was used during or prior to November 1997. *See* Hickman Exhibit ¶¶31, 32 and Hickman Exhibit JH5. The November 1997 date is established by the number assigned to this matrix (900896).[4] *See* Hickman Declaration, ¶¶31, 32, Hickman Exhibit JH5. Similar matrices were used by Catalina as part of its Checkout Direct program prior to November 1997. *See* Hickman Declaration, ¶31 and Hickman Exhibits JH8-JH8.

Similarly, Catalina's One-to-One Direct was used commercially (and therefore reduced to practice) at least as early as November 11, 1997, if not as early as September 1997. At least one matrix associated with One-to-One Direct is dated prior to November 11, 1997. *See* Hickman Exhibit JH8. Additionally, Catalina has a September 1997 targeted mailing for households with children identified in a One-to-One Direct matrix. *See* Hickman Exhibit JH13 (Family Favorites magazine and coupons dated September 1997). Catalina also described the One-to-One Direct program to its customers in a presentation providing target mailing dates between May 15, 1998 and November 15, 1998. *See* Hickman Exhibit JH12, CATA 009801. Catalina has continuously used the Checkout Direct and One-to-One Direct programs since at least 1997. See Hickman Declaration, ¶33.

---

[4]     The matrices in Hickman Exhibits JH5-JH8 each have a "creation date" of May 9, 2004; however, that is actually the date the documents were printed for purposes of this litigation. Catalina uses consecutive numbering for its matrices. Matrices with numbers lower than 902121 were actually created before November 11, 1997. Therefore, each of the matrices in Hickman Exhibits JH5-JH8 were actually created prior to November 1997. *See* Hickman Declaration, ¶¶30, 31.

It is clear that Catalina reduced to practice and commercially used the accused Checkout Direct and One-to-One Direct services more than one year before the effective filing dates of the '129 and '348 patents. As all of the other accused products stem from Checkout Direct, adding features that are not relevant to the '129 and '348 patents, the allegedly infringing features of each of those services was also reduced to practice and commercially used before the effective filing date. These prior uses provide a complete defense to Expanse's claim of infringement. Therefore, Catalina is entitled to summary judgment of non-infringement under §273.


Date:  June 25, 2004                          Respectfully Submitted,

                                              _____ /JVG2384
                                              Eric Kraeutler (Pa. Bar I.D. No. 32189)
                                              John V. Gorman (Pa. Bar I.D. No. 80631)
                                              MORGAN, LEWIS & BOCKIUS, LLP
                                              1701 Market Street
                                              Philadelphia, Pennsylvania  19103-2921
                                              Telephone No.: (215) 963-5000
                                              Facsimile No.: (215) 963-5001

                                              John W. MacPete
                                              Paul V. Storm
                                              STORM & HEMINGWAY, L.L.P.
                                              8117 Preston Road, Suite 460
                                              Dallas, TX 75225
                                              Telephone No.: (214) 292-8300
                                              Facsimile No.: (214) 292-8999

                                              **ATTORNEYS FOR DEFENDANT
                                              CATALINA MARKETING CORP.**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing Defendant's Brief In Support Of Its

Motion For Non-infringement was served upon the attorneys of record of all parties in

accordance with Federal Rules of Civil Procedure, on this 25th day of June, 2004 as follows:

### VIA FIRST CLASS MAIL

Steven M. Coren, Esq.
1525 Locust St., 17th Floor
Philadelphia, PA 19102
Tel: (215) 735-8700
Fax: (215) 735-5170

### VIA E-MAIL

Edward W. Goldstein
GOLDSTEIN & FAUCETT
1177 West Loop South, Suite 400
Houston, TX 77027
Tel: (713) 877-1515
Fax: (713) 877-1737

John V. Gorman