# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EXPANSE NETWORKS, INC. | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| vs. | § | C.A. NO. 02-CV-2857 |
| | § | |
| CATALINA MARKETING CORP., | § | |
| | § | |
| DEFENDANT. | § | |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

# TABLE OF CONTENTS

I. EXPANSE COMPLETELY FAILED TO MEET ITS BURDEN OF PROOF ON INFRINGEMENT................................................................................1

II. EXPANSE'S OPPOSITION TO CATALINA'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT IS BASED ON A FUNDAMENTAL MISUNDERSTANDING OF BASIC PATENT LAW PRINCIPLES ....................................1

III. EXPANSE'S ARGUMENTS IGNORE THE CRITICAL ISSUE OF CLAIM CONSTRUCTION................................................................................2

IV. EXPANSE MAKES NO ATTEMPT TO ADDRESS INFRINGEMENT UNDER CATALINA'S CLAIM CONSTRUCTION................................................4

V. WHERE EXPANSE HAS ATTEMPTED TO PROVIDE EVIDENCE OF INFRINGEMENT, THE EVIDENCE DOES NOT SUPPORT A FINDING OF INFRINGEMENT UNDER CATALINA'S CLAIM CONSTRUCTION ..............................5

    A. ADVERTISEMENT PROFILE...........................................................5

    B. DEFINING A PROBABILISTIC MEASURE OF DEMOGRAPHIC CHARACTERISTICS .................5

    C. SCALAR PRODUCT .................................................................6

    D. CATALINA IS ENTITLED TO SUMMARY JUDGMENT OF NON-INFRINGEMENT UNDER ITS CLAIM CONSTRUCTION ...............................................................9

VI. EXPANSE HAS PRODUCED NO EVIDENCE SUFFICIENT TO SUPPORT A FINDING OF INFRINGEMENT EVEN UNDER EXPANSE'S PROPOSED CLAIM CONSTRUCTION................................................................9

    A. RETRIEVING PRODUCT CHARACTERIZATION INFORMATION................................10

    B. SET OF HEURISTIC RULES..........................................................11

    C. CALCULATING A CORRELATION FACTOR BETWEEN THE ADVERTISEMENT PROFILE AND THE CONSUMER PROFILE................................................................11

    D. THE DECLARATION OF CHARLES ELDERING IS INCONSISTENT ON ITS FACE .................12

VII. THE DM NEWS ARTICLE IS INADMISSIBLE HEARSAY AND IS NOT PROPER SUMMARY JUDGMENT EVIDENCE. ...................................................13

VIII. THE TARGET VONS PROGRAM IS AT LEAST AS SIMILAR TO THE CLAIMS OF THE '129 AND '348 PATENTS AS CATALINA'S CURRENT

PROGRAMS...........................................................................................................15

   A.  SCALAR PRODUCT ..........................................................................................15

   B.  SELECTING THE TARGETED ADVERTISEMENT TO PRESENT TO THE CONSUMER RESPONSIVE TO SAID CALCULATING A CORRELATION FACTOR.......................................................16

   C.  RECEIVING THE ADVERTISEMENT PROFILE ...................................................16

   D.  RETRIEVING PRODUCT CHARACTERIZATION INFORMATION...........................16

IX. IF THE CLAIMS OF THE '129 AND '348 PATENTS ARE CONSTRUED TO COVER CATALINA'S SERVICES, THEN CATALINA HAS A DEFENSE TO INFRINGEMENT UNDER 35 U.S.C. § 273 ...........................................................17

X. CONCLUSION...............................................................................................18

# TABLE OF AUTHORITIES

**CASES**

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 344 (1961) .......................................................... 4

*Bravo Systems, Inc. v. Containment Technologies. Corp.*, 96 F.3d 1372, 1376 (Fed. Cir. 1996) ............................... 1

*Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993) ...................................... 2

*Exxon Chem. Patents v. Lubrizol Corp.*, 64 F.3d 1553, 1563 ................................................................................... 3

*Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1320 (Fed. Cir. 2001) ....................................................... 1

*Minco, Inc. v. Combustion Engineering, Inc.*, 95 F.3d 1109, 1114 (Fed. Cir. 1996) ................................................. 3

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1320 (Fed. Cir. 2003) .......................................................... 2, 3

*Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004) ............................................................... 3

**STATUTES**

35 U.S.C. § 273 ........................................................................................................................................ 1, 2, 17, 18

35 U.S.C. §§ 102 ....................................................................................................................................................... 2

**RULES**

FRCP 8 (e)(2) ......................................................................................................................................................... 18

## I.  EXPANSE COMPLETELY FAILED TO MEET ITS BURDEN OF PROOF ON INFRINGEMENT

Expanse has the burden to prove infringement by a preponderance of the evidence. *S. Bravo Systems, Inc. v. Containment Technologies. Corp.*, 96 F.3d 1372, 1376 (Fed. Cir. 1996). To avoid summary judgment of non-infringement, a patentee must submit evidence to show that every element of the claim is present in the accused infringing product or process. *Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1320 (Fed. Cir. 2001). Expanse made no attempt to meet this burden under Catalina's claim construction. Expanse's attempt to do so under its own claim construction fails because it is based exclusively on Dr. Eldering's expert report. This does not create a fact issue because Dr. Eldering's report contradicts his prior deposition testimony and thus must be disregarded. Indeed Expanse's brief reveals a substantial misunderstanding of basic patent law principles. Catalina's motion for summary judgment of non-infringement is proper and should be granted.

## II. EXPANSE'S OPPOSITION TO CATALINA'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT IS BASED ON A FUNDAMENTAL MISUNDERSTANDING OF BASIC PATENT LAW PRINCIPLES

Expanse argues in the introduction to its Brief in Opposition to Defendant's Motion for Summary Judgment of Non-Infringement that Catalina's argument that Checkout Direct does not infringe are the "exact opposite" of its arguments that the Expanse patents are invalid because Checkout Direct is prior art to them. Expanse is wrong. Catalina's Motion for Summary Judgment of Invalidity (and its argument of non-infringement under 35 U.S.C. § 273) is *in the alternative* to Catalina's Motion for Summary Judgment of Non-infringement. Defendant's Motion for Summary Judgment of Invalidity, p. 1 ("*if* the claims of the '129 and '348 patents are construed to cover Catalina's activities, then the claims are invalid based on prior public use activities of Catalina and others.") (emphasis added). Catalina's position is that the claims of the

'129 and '348 patents should be construed as discussed in Catalina's Markman Brief. If the claims are so construed, there is no evidence that any product, service, or method of Catalina infringes any of the asserted claims and, in that case, Catalina does not assert the claims are rendered invalid by the prior activities of Catalina under 35 U.S.C. §§ 102 (a) or (b). In the alternative, Defendant's Motion for Summary Judgment of Invalidity addresses the situation arising if Expanse's proposed claim construction is adopted. *See* Introduction to Defendant's Motion for Summary Judgment of Invalidity Brief at p. 1. The point of filing the alternative motions is that Expanse may not have it both ways—if the claims of the '129 and '348 patents are construed as Catalina asserts, summary judgment of non-infringement is mandated because there is no evidence of infringement. Alternatively, if the claims are construed to cover Catalina's methods, the claims are invalid because Catalina has been practicing the same methods for more than a year prior to Expanse's asserted priority date, as have others as set forth in Catalina's invalidity motion. In sum, if the Court substantially adopts Catalina's claim construction, Catalina's Motion for Summary Judgment of Non-Infringement should be granted. If the Court adopts Expanse's proposed construction, then the Court should grant Catalina's Motion for Summary Judgment of Invalidity and Summary Judgment of Non-Infringement under § 273.

## III. EXPANSE'S ARGUMENTS IGNORE THE CRITICAL ISSUE OF CLAIM CONSTRUCTION

A determination of patent infringement for a utility patent involves a two-step analysis: 1) first, the asserted claims must be properly construed to determine their scope and meaning and 2) second, the asserted claims as properly construed must be compared to the accused device or process. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1320 (Fed. Cir. 2003), *citing Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993).

Frequently, claim construction is the critical step with summary judgment of non-infringement mandated by the claim construction. *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004) ("The meaning and scope of patent claim terms, as determined by a district court's claim construction rulings, are legal issues central to most patent cases."); *Minco, Inc. v. Combustion Engineering, Inc.*, 95 F.3d 1109, 1114 (Fed. Cir. 1996) ("With regard to the central issue of nearly every patent appeal, claim construction, the district court reached an interpretation fully supported by the record."). The criticality of claim construction is affirmed in numerous appellate decisions.[1]  In its Brief in Opposition, Expanse has completely ignored this initial first step in the infringement analysis.  Expanse merely makes conclusory allegations regarding the existence of certain claim terms, without discussing the meaning of those claim terms, even under their own construction.  This approach is erroneous.

Expanse's brief shows that it does not understand the role of claim construction in a patent infringement case.  For instance, Expanse discusses that the "primary point of novelty in the invention of the '348."  Plaintiff's Brief in Opposition, p. 5.  However, "point of novelty" is a concept used in determining *design patent* infringement and has no relevance to utility patent infringement. *See Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984). Proper infringement analysis involves construing the claims and applying the claims to the accused method and does not consider what the inventor could have or intended to claim. *Omega Eng'g*, 334 F.3d at 1320; *Exxon Chem. Patents v. Lubrizol Corp.*, 64 F.3d 1553, 1563 ("There is no room in patent claim interpretation for the equivalent of the *cy pres* doctrine; that would leave the claiming process too indefinite to serve the purposes which lie at the heart of the patent system.") (Prager, Concurring).  Further, consideration of the "gist" of the invention for

---

[1] A Lexis search in the Federal Circuit Cases database for "(first /4 claim /4 constru!) or ('first step' /4 claim)"

utility patents has no place in a proper claim construction. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 344 (1961) ("there is no legally recognizable or protected 'essential' element, 'gist' or 'heart' of the invention in a combination patent."). Failing to grasp basic patent law principles, it is not surprising that Expanse failed to meet its burden to provide evidence of infringement.

## IV. EXPANSE MAKES NO ATTEMPT TO ADDRESS INFRINGEMENT UNDER CATALINA'S CLAIM CONSTRUCTION

Catalina provided evidence that none of Catalina's accused business methods infringed because they lack, *inter alia*, "consumer profiles," probabilistic measures," "scalar products" and other elements of the asserted claims when those terms are construed as proposed by Catalina. For example, Catalina pointed out that there is no evidence that Catalina generates "consumer profiles" that include at least two demographic attributes associated with a specific consumer. Defendant's Brief in Support of Motion for Summary Judgment of Non-Infringement, ("Brief in Support"), p. 9. Expanse provided no evidence to the contrary. Catalina also pointed out that Catalina does not have a "probabilistic measure" as a numerical probability that a particular consumer had a particular demographic characteristic (and certainly does not have two such measures). *Id.* Expanse provided no evidence to the contrary. Catalina pointed out that it does not multiply the corresponding elements of a consumer profile and a plurality of ad profiles to obtain correlation factors as scalar products. *Id.* at p. 12. Again, Expanse provided no evidence to the contrary. Expanse likewise failed to provide evidence on the other claim elements Catalina pointed out were absent from Catalina's accused methods under Catalina's claim construction. If the Court adopts Catalina's claim construction, summary judgment of non-infringement is mandated.

---

produces 350 hits.

**Defendant's Reply Brief in Support of Motion for**
**Summary Judgment of Non-Infringement – Page 4**

## V. WHERE EXPANSE HAS ATTEMPTED TO PROVIDE EVIDENCE OF INFRINGEMENT, THE EVIDENCE DOES NOT SUPPORT A FINDING OF INFRINGEMENT UNDER CATALINA'S CLAIM CONSTRUCTION

Expanse attempted to argue that Catalina failed to establish the absence of a genuine issue of material fact. *See*, Expanse's brief at pp. 10-18. Expanse is wrong because Expanse has the burden of proof and because Expanse relies heavily on attorney argument without any record evidence. Below, Catalina addresses some of the glowing omissions by Expanse.

### A. ADVERTISEMENT PROFILE

The method claimed in the '129 patent requires receiving an advertisement profile. The claims also specify that the advertisement profile "identif[y] discretionary characteristics of an intended market of the advertisement." As discussed in Defendant's Markman Brief, the advertisement profile must include a least two distinguishing characteristics of the target market. Expanse argues, <u>without evidence</u>, that the advertisement profile "<u>might</u> be a list of UPC's that indicate a consumer's preference for a particular product (i.e. Kraft's brand of macaroni and cheese)." Brief in Opposition, p. 16. However, a list of UPC's does not identify discretionary characteristics of the targeted market. A list of UPC's is only a list of products. Expanse has submitted no evidence that this limitation is present in Catalina's accused methods.

### B. DEFINING A PROBABILISTIC MEASURE OF DEMOGRAPHIC CHARACTERISTICS

Each of the asserted claims of the '348 patent require that the product characterization information include "a set of heuristic rules defining a probabilistic measure of demographic characteristics," as is shown in Catalina's Markman brief, the term "probabilistic measure" means numeric value between 0.0-1.0 (such that 1=100%, 0.2=20%, etc.) or expressed as a percentage (such as 100%, 20%, etc.) representing the likelihood that a consumer possesses particular characteristics (i.e., 80% chance the customer is married, 40% chance the customer has

kids). Expanse made no effort to show that any Catalina accused method uses "probabilistic measures" as required by the '348 patent under Catalina's claim construction. Therefore, Catalina's system does not contain the probabilistic measure required by both the '129 and '348 patents and Catalina is entitled to summary judgment on that basis.

### C. SCALAR PRODUCT

As described in Defendant's Markman Brief, the term "scalar product" is a well-known mathematical term having a specific meaning. The scalar product of two vectors is determined by "multiply[ing] their corresponding components together and add[ing] the results." Exhibit 32 to Catalina's Markman Brief. Expanse has not cited any evidence showing that Catalina's system utilizes any vectors or multiplies any numbers to select advertisements. Indeed, in its attempt to keep the claims under the '129 patent alive, Expanse's brief makes numerous assertions of fact without supporting evidence. Many of these assertions are wrong.

For example, Expanse asserts in its Brief in Opposition to Defendant's Motion for Summary Judgment of Non-Infringement ("Brief in Opposition") that "In order to determine which of these 400 different coupons to provide to a particular consumer, Catalina creates a profile of the consumer based on that consumer's purchase history, and then compares the consumer profile with the advertisement profiles corresponding to each of the 400 different offers." Brief in Opposition, p. 16. This assertion is not correct. Catalina does not create any profile of any consumer in a One-to-One Direct program. Instead, Catalina analyzes a consumer's purchase history to determine if pre-determined purchase history criteria are met. If so, the consumer qualifies for the coupon. *See* Gorman Exhibit 17, Second Hendry Decl., ¶ 2.

Expanse also asserts in its Brief in Opposition that "In each instance above, Catalina is selecting between at least two advertisements based on the degree to which the consumer profile

corresponds to the particular advertisement profile by using a scalar product as defined by Expanse in the '129 patent." Brief in Opposition, p. 17. This statement does not describe any system used by Catalina. Catalina does not calculate any scalar products to determine whether a consumer will be given a coupon. Catalina's Checkout Direct and related products determine whether a consumer will receive a coupon based on whether the consumer's purchase history matches pre-defined criteria. *See* Gorman Exhibit 17, Second Hendry Decl., ¶ 3.

Expanse also asserts that "In addition, Catalina also uses the quantity or dollar amount measure to select between providing the consumer with a targeted coupon and a generic coupon." Brief in Opposition, p. 17. This statement is also incorrect. In its One-to-One Direct Program, Catalina runs a query on the database at identifies all consumers who qualify for a particular coupon. As each coupon criteria is compared against the individual consumer's purchase history information, the only determination made is whether the individual qualifies for the coupon. After queries have been run for all active coupon deals, the One-to-One direct system looks at how many coupons each consumer qualified for and adds generic coupons to the mailing so that the full number of coupons allowable in that mailing will be sent to each consumer. *See* Gorman Exhibit 17, Second Hendry Decl., ¶ 4.

Expanse additionally asserts "The selection between multiple advertisements is not a simple true/false proposition as suggested by Catalina. Instead, it is a deliberate process of measuring the degree to which a consumer profile corresponds to a particular advertisement." Brief in Opposition, p. 17. This statement is not accurate. Again, Catalina does not create any consumer profile. All matrix queries are performed directly against the purchase history records, not against a profile of the consumer. *See* Gorman Exhibit 17, Second Hendry Decl., ¶5.

Catalina's One-to-One direct marketing service involves sending targeted as well as non-targeted coupons to consumers. Generally, a certain number of coupon spots are available in a mailer. Catalina first runs its matrices on the purchase record database and determines how many targeted coupons each consumer qualifies for. In the vast majority of cases, a particular consumer will quality for fewer coupons than the maximum permitted in a particular mailer. In such cases, the remainder of the spots in the mailer sent to that consumer will be filled with non-targeted coupons. In a very small percentage of cases a consumer will qualify for more coupons than the number of available spots in the mailer. In that case, the highest priority coupons will be sent to the consumer. Coupon priority is determined by the price being paid by the client (e.g. Procter and Gamble) or by contracted circulation requirements. The coupon priority is not based in any way on how closely the coupon matches the interest of the particular consumer or on any comparison with any information about a particular consumer. *See* Gorman Exhibit 17, Second Hendry Decl., ¶ 6.

Expanse also stated on page 17 of its brief that Hendry's testimony proved that Catalina used scalar products as correlation factors to determine which advertisement to deliver to a particular consumer based on my use of the word "matching." When Hendry referred to "matching," all he meant was that there is a logical comparison between the number of coupons a particular consumer qualifies to receive with the minimum number of coupons necessary to make the mailer profitable. If a particular consumer qualifies to receive three coupons and the mailer requires five coupons to be cost effective, that consumer will not receive any mailer. A different consumer that qualifies for eight coupons will receive a mailer because they "match" the requirements for the mailer. No scalar product is calculated in the process. *See* Gorman Exhibit 17, Second Hendry Decl., ¶ 7.

Also, Expanse asserts that Catalina documents stating that households have been "identified as Hispanic" means that Catalina is creating demographic profiles. This is incorrect. The computer makes no association between particular consumer IDs and the criteria for a given matrix nor are the consumer IDs that are identified as meeting the criteria for a particular matrix maintained in Catalina's system for use in later programs. *See* Gorman Exhibit 17, Second Hendry Decl., ¶ 8.

If a "consumer profile" simply means a consumer ID such as a loyalty card number that meets the criteria of a given matrix, both Vons and Catalina have been conducting such studies including ones directed at demographic attributes since at least 1993. Both companies basic methodologies were known within the industry prior to 1994 based on customer meetings (i.e. P&G, and others). *See* Gorman Exhibit 17, Second Hendry Decl., ¶ 9.

### D. CATALINA IS ENTITLED TO SUMMARY JUDGMENT OF NON-INFRINGEMENT UNDER ITS CLAIM CONSTRUCTION

As detailed above, Expanse made no effort to submit evidence of infringement under Catalina's claim construction. Accordingly, Catalina is entitled to summary judgment of non-infringement when this Court adopts its claim construction.

### VI. EXPANSE HAS PRODUCED NO EVIDENCE SUFFICIENT TO SUPPORT A FINDING OF INFRINGEMENT EVEN UNDER EXPANSE'S PROPOSED CLAIM CONSTRUCTION

Many of the assertions made by Expanse regarding the attributes of Catalina's products are not supported by any citation to evidence whatsoever. Expanse offers no evidence showing Catalina's products contain the following claim limitations, even under its own proposed claim construction:

### A. RETRIEVING PRODUCT CHARACTERIZATION INFORMATION

The claims of the '348 patent require the step of "Retrieving product characterization information." Expanse argues that this limitation is satisfied because Catalina "retrieves" the list of UPC codes included in a matrix and that "UPC codes are not randomly assigned numbers. Instead, each integer in the code refers specifically to characteristics of the product it is representing." Brief in Opposition, p. 13.   This assertion is false and irrelevant.

First, while it is true that a UPC code alone does not contain product characterization information, that fact is not relevant.  The claims of the '348 patent require "retrieving product characterization information ...[including] a set of heuristic rules defining a probabilistic measure of demographic characteristics of a purchaser of a product." Expanse made no effort to provide evidence that a single UPC alone meets that requirement of the claims.  Expanse therefore addresses an argument Catalina did not make and which again reveals Expanse's fundamental misunderstanding of the patent law principles involved.  Further, Expanse made unsupported and incorrect statements to make its irrelevant argument.  In particular, the UPC code itself does not contain product characterization information, it is just a number.  Deposition of Eric Williams (30(b)(6)), of May 4, 2004, Non-Infringement Exhibit 16, p. 75.   Expanse's own subsequent argument acknowledges this: "*with the right tools*, product information can be gleaned from the UPC code.  'We [Catalina] purchase a dictionary from a company called Information Resources, which manages a characterization information database of UPC's with all the attributes that go along with that such as size, weight, low cal, low salt, other attributes that describe the item.'"  Brief in Opposition, p. 13 (emphasis added).  Therefore, the alleged "support" for Expanse's argument actually shows that Catalina's systems do not use the UPC code for product characterization information.  The "right tools," in the case of Catalina's system

is the information in the database purchased from Information Resources.   That data is not retrieved or used in the process of performing a matrix query, only the list of UPC codes are used.  Hickman Decl., Exhibit MH, ¶ 19.  Therefore, even if the list of UPC codes is "retrieved," product characterization information is not retrieved.

**B.  SET OF HEURISTIC RULES**

The claims of the '348 patent require a step of "retrieving product characterization information ... wherein the product characterization information includes a set of heuristic rules...."  This limitation requires that the set of heuristic rules be first stored in the computer system and later retrieved.  In support of this limitation, Expanse argues:

> Catalina focuses on the fact that it does not access or apply *stored* heuristic rules. (emphasis added) (Goldstein Ex. 16 at 10)  Again, Catalina seems to be relying on the word "retrieving" for this assumption that the heuristic rules must first be stored.  However, as was true in the above section, when these rules are input into the computer, they are immediately stored, albeit sometimes only for short time. And these rules can simply be input as UPC codes.

Brief in Opposition, p. 14.  Expanse offers no support for the statement "when these rules are input into the computer..."  Catalina does not input any heuristic rules into the computer. Hendry Decl., Exhibit MH, ¶ 15.  Catalina only inputs a list of UPC codes and information regarding the coupon deal.  Hendry Decl., Exhibit MH, ¶ 19.  Therefore, no heuristic rules are "retrieved" when the list of UPC codes is retrieved, and this claim limitation is not met.

**C.  CALCULATING A CORRELATION FACTOR BETWEEN THE ADVERTISEMENT PROFILE AND THE CONSUMER PROFILE**

Expanse makes the following argument regarding this limitation:

> In order to determine which of these 400 different coupons to provide to a particular consumer, Catalina creates a profile of the consumer based on that consumer's purchase history, and then compares the consumer profile with the advertisement profiles corresponding to each of the 400 different offers.  [No cite].

Brief in Opposition, p. 16. Expanse asserts without any evidentiary support that Catalina compares a consumer profile with an advertisement profile. According to Expanse, the advertisement profile is the list of UPC's in the matrix. Brief in Opposition, p. 16. Yet, earlier in its brief, Expanse asserts that the consumer profile is the list of card numbers identified <u>as a result</u> of the matrix query being performed on the purchase records. Once the list of user IDs to receive the promotion is created in Catalina's system, no other comparison is made with the list of UPC codes. Hickman Decl., Exhibit JH, ¶¶ 26-29. Therefore, under Expanse's own argument, what is asserted to be an advertisement profile is never compared with what Expanse asserts to be the consumer profile. Further, as noted above and in the Hendry declaration, Expanse's unsupported arguments are factually incorrect.

### D. THE DECLARATION OF CHARLES ELDERING IS INCONSISTENT ON ITS FACE

Eldering's assertions during his 02/24/04 deposition directly conflict with his 06/21/04 expert testimony report. During the deposition, Mr. Eldering testified that all of the claims of the '129 patent involve a plurality of advertisements:

> **Q.** But there has to be a calculation of a scalar product between consumer profile and a second ad before you can fall within the scope of Claim 1 of the '129 patent; correct?
>
> **A.** There has to be a correlation calculated between a plurality of advertisements at some point, not necessarily in real-time or at that moment. But there has to be a comparison, if you will, correlation – correlation and comparison and a selection of an advertisement, yes.
>
> **Q.** And that's true for all of the claims asserted against Catalina from the '129 patent; correct?

**A.** <u>It is my recollection that all of the claims of the
'129 patent involve a plurality of
advertisements.</u>

**Q.**     And selecting between them using the scalar
product results of consumer profiles, of at
least two ad profiles; correct?

**A.**     I believe that is correct, yes.

*See* 02/24/04 Deposition of Charles Eldering, pp.160-61.   In contrast, in his expert report,
Eldering makes assertions that are in direct conflict with the deposition statements.   In fact, when
construing Claim 17 of the '129 patent, Eldering testifies to "selecting <u>the targeted advertisement</u>
to present to the consumer responsive to said calculating a correlation factor."   *See* 06/21/04
Expert Report of Charles Eldering, Appendix D, p2.

"[Eldering] cannot create an issue of fact by supplying [an expert declaration]
contradicting his prior deposition testimony, without explaining the contradiction or attempting
to resolve the disparity." *Sinskey v. Pharmacia Ophtalmics, Inc.,* 982 F.2d 494, 498 (Fed. Cir.
1992), (citing *Martin v. Merrell Dow Pharmaceuticals, Inc.,* 851 F.2d 703, 706 (3d Cir. 1988)
(emphasis added).   In his expert report, Eldering gives no explanation for the inconsistency, nor
does he attempt to reconcile the inconsistency, not even addresses the earlier deposition
testimony.   Eldering failed his duty to provide an explanation for the inconsistency at the time
the contradicting statement was made in the expert report, and he cannot be allowed to preclude
summary judgment by simply contradicting his own prior testimony.   To do otherwise would
seriously impair the utility of *Federal Rule of Civil Procedure 56.   Id.*

**VII.   THE DM NEWS ARTICLE IS INADMISSIBLE HEARSAY AND IS NOT
PROPER SUMMARY JUDGMENT EVIDENCE.**

Expanse partially relies on a DM News article entitled "Catalina Mailer Seeks Hispanics
Based on Buying Behavior" in support of its Opposition to Catalina's Motion for Summary

Judgment of Non-Infringement. *See, e.g.,* Brief in Opposition, p. 11. This article is inadmissible hearsay and should not be considered in the determination of Defendant's motion.

Federal Rule of Evidence 801 defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FRE 801(c). A "statement" under FRE 801 is "(1) an oral or written assertion..." FRE 801(a). The rules against hearsay also apply to summary judgment proceedings: "It is well settled that a party opposing a motion for summary judgment must rely on "competent evidence of a type otherwise admissible at trial." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). Accordingly, "a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment." *Bombard*, 92 F.3d at 562; *Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 (3rd Cir. 1996); *Scosche Indus. v. Visor Gear*, 121 F.3d 675, 681 (Fed. Cir. 1997) (citing Miller v. Solem, 728 F.2d 1020, 1026 (8th Cir. 1984) (affidavits containing hearsay statements failed to comply with Rule 56(e) requirement "that the facts set forth in affidavits be admissible in evidence"); *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980) ("hearsay evidence in [Rule 56] affidavits is entitled to no weight"); *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980) (hearsay evidence "is inadmissible and may not be considered by this court on review of a summary judgment"); *State Mut. Life Assurance Co. of Am. v. Deer Creek Park*, 612 F.2d 259, 264-65 (6th Cir. 1979) ("Affidavits composed of hearsay and opinion evidence do not satisfy Rule 56(e) and must be disregarded.").

The DM News article contains statements by the article's author which were not made while testifying under oath. The statements are used to prove the truth of the matters asserted—Expanse offered the article in an attempt to show the attributes of Defendant's accused products.

There is no hearsay exception which applies to the article. Therefore, the article is inadmissible hearsay and should not be considered. *Gantt v. Whitaker*, 57 Fed. Appx. 141 (4th Cir. 2003) ("newspaper articles are inadmissible hearsay to the extent that they are introduced to prove the factual matters asserted therein") (internal quotes omitted); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (holding newspaper article inadmissible hearsay).

## VIII.    THE TARGET VONS PROGRAM IS AT LEAST AS SIMILAR TO THE CLAIMS OF THE '129 AND '348 PATENTS AS CATALINA'S CURRENT PROGRAMS

An additional inconsistency in Expanse's position on infringement is found in Expanse's argument that Target Vons does not invalidate the '129 and '348 patents. Expanse has asserted that Target Vons lacked some of the claim elements, such as scalar product, and therefore cannot invalidate under § 102. The basic method used by Target Vons is the same as that used by Checkout Direct and One-to-One Direct that are now accused of infringement. The steps relied on by Catalina to establish invalidity based on Target Vons are the same steps that Expanse asserts (without sufficient evidence) infringe when used by Catalina in Checkout Direct. If Catalina's Target Vons evidence was not sufficient to establish all of the claim steps for purposes of invalidity, then Expanse's assertion of these same types of steps in Checkout Direct and One-to-One Direct are likewise insufficient to establish infringement. Expanse cannot have it both ways.

### A. SCALAR PRODUCT

Expanse claims that the Target Vons program does not use a scalar product to calculate a correlation between a consumer profile and an ad profile, as required by the claims of the '129 patent. Brief in Opposition (Invalidity), p. 27. However, the Target Vons program, similarly to Catalina's products, targeted consumers by comparing a list of products against a consumer's purchase history to determine whether the consumer qualifies for the coupon. Catalina's

Invalidity Exhibit 10, Part 2, CATA 014996; Hendry Decl., Exhibit MH, ¶ 6 & 7. Therefore, if this aspect of Target Vons does not constitute use of a scalar product to calculate a correlation between a consumer profile and an ad profile, then Catalina does not satisfy this limitation either.

### B. SELECTING THE TARGETED ADVERTISEMENT TO PRESENT TO THE CONSUMER RESPONSIVE TO SAID CALCULATING A CORRELATION FACTOR

Expanse also states that Target Vons does not disclose the step of "selecting the targeted advertisement to present to the consumer responsive to said calculating a correlation factor." Brief in Opposition (Invalidity), p. 27. Again, both Target Vons and Catalina's system target consumers by comparing a list of products against a consumer's purchase history to determine whether the consumer qualifies for the coupon. Catalina's Invalidity Exhibit 10, Part 2, CATA 014996; Hendry Decl., Exhibit MH, ¶ 6 & 7; Hickman Decl., Exhibit JH, ¶ 18. Therefore, if Target Vons does not include this limitation, then neither does One-to-One Direct.

### C. RECEIVING THE ADVERTISEMENT PROFILE

Expanse argues that Target Vons did not include "receiving the advertisement profile." However, the Target Vons program allowed manufacturers to select a LIFESTYLE group to target, which is a list of UPC's for products in a certain category. Catalina's Invalidity Exhibit 10, Part 2, CATA 014995; Hendry Decl., Exhibit MH, ¶ 6 & 7. This is very similar to what Expanse claims is the advertisement profile in Catalina's system: "The advertisement profile for a particular coupon (50-cents off of Kraft's macaroni and cheese) might be a list of UPC's that indicate a consumer's preference for a particular product." Brief in Opposition, p. 16.

### D. RETRIEVING PRODUCT CHARACTERIZATION INFORMATION

Expanse states that Target Vons does not disclose "retrieving product characterization information." Brief in Opposition (Invalidity), p. 31. However, Expanse asserts in its Brief in Opposition on Non-Infringement that the list of UPC's Catalina uses to perform the database

queries contain product characterization information.  Brief in Opposition, p. 13.  Yet, Target

Vons uses lists of UPC codes in each of its LIFESTYLE groups.  Catalina's Invalidity Exhibit

10, Part 2, CATA 014995 ("Vons Electronic Marketing selects the UPC's included in each

category and LIFESTYLE Group"); Hendry Decl., Exhibit MH, ¶ 6 & 7.  Therefore, if the

LIFESTYLE UPC lists of Target Vons do not constitute product characterization information,

then the UPC lists used by Catalina likewise do not.

### IX. IF THE CLAIMS OF THE '129 AND '348 PATENTS ARE CONSTRUED TO COVER CATALINA'S SERVICES, THEN CATALINA HAS A DEFENSE TO INFRINGEMENT UNDER 35 U.S.C. § 273

Expanse argues that Catalina has not established its § 273 defense because Mike

Hickman's declaration is uncorroborated.  Brief in Opposition, p. 18.  However, Hickman's

testimony is corroborated by documents consisting of Catalina matrices, Exhibits JH 5-JH 8.

While these documents are not dated on their face, each matrix is assigned a number which does

appear on the face of the document.  As explained in the Hickman declaration, the date of

creation of the matrix can be established using the matrix number.  Hickman Decl., ¶¶ 30-33.

The Hickman declaration is also corroborated by paragraphs 10 and 11 of the Thissen

Declaration.  Exhibit CT, ¶¶ 10, 11.

Expanse argues that Catalina's arguments are flawed in that they contradict one another

and are inconsistent.  Brief in Opposition, p. 19.  Expanse argues "the mere fact that Defendant

can argue, in the same brief in support of its Motion for Summary Judgment that it practiced a

claimed method more than one year before the effective filing dates of the patents in suit and the

one hand, and that it does not infringe because it does not practice all the steps of the inventions

claimed in the patents in suit, on the other hand.  This [sic] clearly indicates that there are facts to

be determined as to the nature of the program/system practiced by the Defendant and that

program/system was practiced, especially since the standard of clear and convincing evidence is required by the statute." Brief in Opposition, p. 19-20.  This argument is ridiculous.  Catalina clearly argued that it does not believe its products infringe any of the asserted claims of the '129 or '348 patents, properly construed, and that summary judgment of non-infringement should be granted on that basis.  In the alternative, Catalina has also shown that if the asserted claims are construed to cover its activities, it has a defense to infringement under 35 U.S.C. § 273 because it has practiced the accused method for more than one year prior to the filing date.  This type of alternative argument is proper. *See* FRCP 8 (e)(2).

Finally, Expanse argues that the § 273 defense is not applicable because § 273 applies to "methods" and Catalina has referred to its accused services as "products," "services," and "systems." Brief in Opposition, p. 20.  Catalina has used these terms because that is how it refers to its services in the market place.  Clearly, regardless of the term used, the underlying substance is a method for providing the product or service.  Additionally, each of the claims asserted by Expanse in both the '348 and '129 patents apply only to methods.  *See* '348 patent, claim 1 ("method for generating"); '129 patent, claim 17 ("method for selecting").  Expanse cannot have it both ways and argue that Catalina's services are a method for infringement purposes but not for purposes of § 273.

## X.  CONCLUSION

Expanse has failed to come forward with any evidence supporting a finding of infringement under the claim construction proposed by Catalina.  Therefore, if the Court accepts Catalina's proposed claim construction as to at of the disputed terms in the asserted claims, the Court should grant summary judgment in favor of Defendants.  Even if the Court were to adopt Expanse's claim construction for every term, Expanse has omitted evidence of infringement

regarding several claim limitations even under its own proposed construction. Further, to the extent the claims of the '129 or '348 patent are construed to cover Catalina's marketing services, Catalina has a defense to infringement under 35 U.S.C. §273 because it has practiced the accused method for more than one year prior to Expanse's effective filing date. Therefore, Defendants request that the Court enter judgment that Defendants products do not infringe the '129 or '348 patents.

Date: July 16, 2004

Respectfully Submitted,

_____ /JVG2384

Eric Kraeutler (Pa. Bar I.D. No. 32189)
John V. Gorman (Pa. Bar I.D. No. 80631)
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
Telephone No.: (215) 963-5000
Facsimile No.: (215) 963-5001

John W. MacPete
Paul V. Storm
STORM & HEMINGWAY, L.L.P.
8117 Preston Road, Suite 460
Dallas, TX 75225
Telephone No.: (214) 292-8300
Facsimile No.: (214) 292-8999

**ATTORNEYS FOR DEFENDANT
CATALINA MARKETING CORP.**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing Defendant's Reply in Support of Motion for Summary Judgment of Non-Infringement was served upon the attorneys of record of all parties in accordance with Federal Rules of Civil Procedure, on this 16th day of July, 2004, as follows:

VIA FIRST CLASS MAIL

Steven M. Coren, Esq.
1525 Locust St., 17th Floor
Philadelphia, PA 19102
Tel: (215) 735-8700
Fax: (215) 735-5170

VIA E-MAIL AND OVERNIGHT COURIER

Edward W. Goldstein
GOLDSTEIN & FAUCETT
1177 West Loop South, Suite 400
Houston, TX 77027
Tel: (713) 877-1515
Fax: (713) 877-1737

_____
Thomas J. Sullivan